### In re HERRMAN et al.

(Circuit Court of Appeals, Second Circuit. June 15, 1893.)

CUSTOMS DUTIES—CLASSIFICATION—"ASTRACHANS."

So-called "Astrachans," being fabrics composed of cotton and hair, made in imitation of the coat of the Astrachan lamb, and commercially known as "Astrachans," are dutiable under the tariff act of October 1, 1890, at 44 cents a pound and 50 per cent. ad valorem, under paragraph 392, as a manufacture in whole or in part of goat hair, and not at 49½ cents a pound and 60 per cent. ad valorem, under paragraph 396, as "pile fabrics." 52 Fed. Rep. 941, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a petition for a review of a decision of the board of general appraisers sustaining the action of the collector in the classification for duty of certain goods imported by H. Herrman, Sternbach & Co. The court below reversed the decision, (52 Fed. Rep. 941,) and the government appeals. Affirmed.

Jas. T. Van Rennsaelaer, Asst. U. S. Atty., for appellant.

W. Wickham Smith, for appellees.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The appellees imported in October and November, 1890, certain fabrics composed of cotton and hair, made in imitation of the coat of the Astrachan lamb, and commercially known by the name of "Astrachans." The collector assessed the importation for duty under that provision of the tariff act of October 1, 1890, which imposes duty "on * * * plushes and other pile fabrics * * * composed wholly or in part of wool, worsted, or hair of the camel, goat, alpaca, or other animals," (Schedule K, par. 396.) The appellees insisted that they were dutiable under another provision of that act as "manufactures made wholly or in part of wool, worsted, the hair of the camel, goat, alpaca, or other animals, not specially provided for in this act," (Schedule K, par. 392.) The board of general appraisers, after hearing testimony offered in behalf of the importers and the collector, approved the classification, and affirmed the action of the collector. Upon an appeal by the importers this decision was reversed by the circuit court, and the contention of the importers was sustained. We are now called upon to determine whether the conclusion of the circuit court was correct.

The question in the case is wholly one of fact, viz. whether fabrics like the importations are pile fabrics within the commercial sense of the term obtaining at the date of the passage of the tariff act. The act of 1890 is the first tariff act in which the term is used in the enumeration of dutiable subjects. It occurs in three schedules of this act, being used not only in the wool schedule, referred to, but also in the cotton and silk schedules. In the cotton schedule duty is imposed "upon plushes, velvets, velveteens, corduroys, and all pile fabrics composed of cotton," and in the silk schedule "upon velvets, plushes, or other pile fabrics of silk." If the importations were pile fabrics, they were specially provided for, and therefore outside of the category of manufactures enumerated in the provision relied on by the importers.

It is hardly necessary to reiterate the well-established rule of statutory construction which declares that the commercial designation is the first and most controlling standard for the classification of dutiable subjects in tariff laws, and that commonly it is only when the commercial designation fails to give an article its proper place in the classification of the laws that resort is to be had to the lexicographers or other sources of interpretation. The most recent illustration of this rule is found in the case of Hedden v. Richard, 13 Sup. Ct. Rep. 891, (decided by the supreme court May 10, 1893.) In that case the question was whether certain importations of furniture in separate parts or pieces, ready to be put together to form articles of furniture fit for use, were dutiable as "furniture finished," under one of the provisions of the tariff act of March 3, 1883, or as "house or cabinet furniture in piece, or rough

and unfinished." Evidence was given tending to show that the term "finished," as applied to furniture, had in the furniture trade a particular trade meaning; that, according to that meaning, if an article had been varnished, stained, oiled, polished, or the like, it was finished, and that importations like those in controversy were known to the trade as "finished knocked-down" articles. The court held that the case presented a question of fact for the jury, which was whether the articles were "furniture finished," within the trade meaning of the term. The opinion states:

"While it is true that language will be presumed to have the same meaning in commerce that it has in ordinary use, unless the contrary is shown, yet a commercial designation of an article among traders and importers, where such designation is clearly established, fixes its character for the purpose of the tariff laws. A specific designation eo nomine must prevail over general terms, and a commercial designation is the standard by which the dutiable character of the article is fixed. This rule is equally applicable where a term is confined in its meaning not merely to commerce, but to a particular trade; and in such case, also, the presumption is that the term was used in its trade signification."

The decision of the circuit court was based wholly upon the evidence and findings returned by the board of general appraisers; and such is the conflict in the evidence returned by them that, if they had found distinctly upon the issue whether Astrachans at the time of the passage of the act were or were not pile fabrics within the prevailing commercial sense of the term, such a finding could not have been safely or properly disturbed by the circuit court. In Re Van Blankensteyn, 56 Fed. Rep. 474, (recently decided by this court,) we said that "the circuit court should not undertake to disturb the findings of the board upon doubtful questions of fact, and especially as to questions of fact which turn upon the intelligence and credibility of witnesses who have been produced before the board; but when a finding of fact is wholly without evidence to support it, or when it is clearly contrary to the weight of evidence, it is the duty of the circuit court to disregard it." But there is no distinct finding in the record by the board of appraisers upon the real question of fact. The two most explicit findings are as follows:

"(4) That the term 'pile fabrics' was not at the time of the passage of the act aforesaid a term of commercial designation in the United States for the purchase and sale of any fabrics made wholly or in part of wool, worsted, or goat hair." "(5) That at the time last mentioned there was no established, well-known, certain, and uniform general usage or custom in trade and commerce in the United States in relation to 'Astrachans,' excluding them from or including them within the term 'pile fabrics.' "

They did not find and could not have intended to find that the term "pile fabrics" was not a commercial term, used to describe a numerous class of fabrics. The evidence is overwhelming that it was a generic term, applied to describe certain varieties of manufactured goods, including velvets, plushes, velveteens, corduroys, and some others. The great majority of the witnesses testified that it did not include Astrachans; the others testified that it did include them, and was applied indiscriminately to all goods woven so as to embody certain specified peculiarities of form and texture.

The substance of the first finding is that the term was not one by which any fabrics were bought and sold. In this sense the finding is obviously correct, because the undisputed testimony was that each of the several varieties embraced by the generic term was always bought and sold by its distinctive name. The other finding, that there was no established, well-known, certain, and uniform usage excluding Astrachans from or including them within the term "pile fabrics," is apparently intended as an amplification of the preceding finding, and may be taken to mean that, inasmuch as goods were never bought and sold by the trade name of "pile fabrics," it could not be found that there was any usage or custom including or excluding Astrachans from its scope. The opinion accompanying the findings implies this to be the meaning. The opinion states:

"We question whether the understanding of any merchant, which may or may not have been expressed before he testifies, is to be taken to establish a commercial designation. Designation would seem to mean commercial nomenclature, the name by which an article is bought and sold."

Unless this is the meaning of the finding, the finding is plainly contrary to the evidence. Two classes of witnesses were examined. According to the testimony of both the term "pile fabric" was used in trade to designate a group of goods; but, according to the testimony of one class, Astrachans were included in the group, while, according to the testimony of the other, they were not. The testimony of one class must have been correct and that of the other incorrect. Astrachans were pile fabrics, according to the trade meaning, or they were not; but the board of appraisers, instead of finding how the fact was, find that, because they were not bought or sold by the name of "pile fabrics," they had no commercial designation. Consequently the finding of the board did not enlighten, much less was it controlling upon, the circuit court. The judge of the circuit court took this view, and he concluded that, according to the evidence in the record, the importations were not of the class which were commercially known by the generic name of "pile fabrics." We concur in his views.

A descriptive term found in a tariff act may have a commercial meaning which differs from the ordinary meaning, notwithstanding it is not used in trade as a specific designation by which any article or product is bought and sold. Thus, in Smith v. Field, 105 U. S. 52, the plaintiffs imported certain torchon laces, which they insisted were dutiable under the tariff act as "thread lace and insertings." They produced evidence tending to show that the terms "thread lace and insertings," as used and understood among commercial men of the country, included all laces made of thread on a cushion, with bobbins moved by hand, in distinction from laces made by machinery or with needles; that they had a special name attached to them, such as "point lace," "torchon lace," "Smyrna lace," and the like, by which their style and kind were indicated; and that torchon laces were generally known as thread laces, and were such in fact. Evidence was given by the defendant tending to show that

torchon laces were not known as thread laces, but only by their special designation, and that they were made of linen thread, by hand. Upon this evidence of commercial understanding the trial judge left it to the jury to determine whether the torchon lace imported by the plaintiffs was "thread lace," and instructed the jury that it made no difference whether the lace was known to commerce at the time the law was enacted, but that, if brought into use after, and yet came under the general designation of thread lace, it was subject to the duty imposed by law upon that article. These instructions were approved by the supreme court. In Pickhardt v. Merritt, 132 U. S. 252, 10 Sup. Ct. Rep. 80, where the tariff act imposed duties on "aniline dyes and colors, by whatever name known," it appeared that the importations were dyes derived from coal tar, which were not known in commerce at the date of the enactment; they were called by specific names, and were not chemically aniline colors. The court held that the lower court properly instructed the jury that, if the articles in question, according to the understanding of commercial men, dealers in and importers of them, would, when imported, be included in that class of articles known as aniline dyes, they were subject to duty as aniline dyes. In Robbins v. Robertson, 33 Fed. Rep. 709, the question was whether certain steel buckles, clasps, etc., were dutiable as "manufactures composed wholly or in part of steel, not specially provided for," or as "jewelry of all kinds." Obviously such articles were not bought or sold by the trade name of "jewelry of all kinds;" but the court rules that the jury were to ascertain from the evidence before them whether the term "jewelry of all kinds" had acquired a distinct meaning in the trade and commerce of the country, different from its ordinary meaning. The court instructed the jury that if it had, and the articles were within the description, according to commercial designation, they were dutiable as jewelry, and not as manufactures of steel.

In the present case, although the evidence indicates that, according to the understanding of weavers, goods woven, as were the importations in question, are classed as pile fabrics, the weight of the evidence is decidedly that, according to the understanding of commercial men generally, they are not so classed.

The judgment of the circuit court is affirmed.