· KNAUTH, NACHOD & KUHNE *v.* UNITED STATES (No. 1472).[1]

IMITATION MOHAIR ASTRAKHANS.

In paragraph 325, tariff act of 1909, the words "plushes, velvets, velveteens, corduroys, and all pile fabrics, cut or uncut, whether or not the pile covers the entire surface," are broad enough to include any pile fabric as commonly understood. The phrase "cut or uncut" does not restrict the meaning; it merely makes the meaning clear, and the goods were properly assessed under the named paragraph.

United States Court of Customs Appeals, May 3, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36495 (T. D. 34774).

[Affirmed.]

*Allan R. Brown* for appellants
*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
The merchandise in question consists of imitation mohair astrakhans composed of jute and cotton. It was assessed for duty at the minimum rate of 47½ per cent ad valorem under paragraph 325 of the tariff act of 1909, which paragraph provides various rates of duty on the following: "Plushes, velvets, velveteens, corduroys, and all pile fabrics, cut or uncut, whether or not the pile covers the entire surface." The protest claims the goods to be dutiable at 45 per cent ad valorem either under paragraph 332, as manufactures in chief

---

value of cotton, or under paragraph 358, as manufactures in chief value of vegetable fiber, and contends that the merchandise is not a pile fabric for tariff purposes. This presents the sole question in the case.

The contention of the importers is that by judicial interpretation a limitation has been placed upon the meaning of the term "pile fabrics" which excluded the merchandise under consideration, and it is further claimed that the fabrics are not pile fabrics within the ordinary meaning of these terms, and that no commercial meaning of the term different from the ordinary meaning is shown by the record. It is further claimed that even though a commercial meaning had been shown to exist prior to the passage of the act of August 5, 1909, the fact would be immaterial, because Congress must be presumed by the subsequent use of the term "pile fabrics," without further explanation, to have employed the term in the sense laid down by the courts.

The term "astrakhan" is defined by the Standard Dictionary as a fabric with a curled pile imitative of the Astrakhan pelt, and the term, in its secondary use, is defined by the Century Dictionary as "a rough woolen fabric with a long and closely curled pile in imitation of the fur." The term "pile" is defined as—

4. A hair-like surface on a fabric, especially when irregular.

and

5. Specif., in carpet manufacture, a loop or loops.

"Pile weaving" is defined by the Standard Dictionary as—

A method of weaving in which there are two warps, one of which is formed into loops over wires, the wires being drawn out after the formation of the loops, which latter may be cut, as in Wilton carpet, or left uncut, as in Brussels.

In the Oxford Dictionary, "pile" is defined as—

A nap upon cloth; now esp. the downy nap or shag of velvet, plush, and similar fabrics, produced by an accessory or secondary warp the loops of which are cut so as to form a nap; also, loops in a carpet similarly produced and forming a nap. * * * In Brussels carpet the wires are simply withdrawn and the loops left standing.

"Pile weaving" is defined in the Oxford Dictionary as—

The weaving of fabrics with a pile or nap, by means of the pile warp, which, by being passed over the pile wires, forms loops, which are afterwards cut, or, in some cases, left standing. * * * In pile weaving, in addition to the usual warp and weft threads, a third thread is introduced, and is thrown into loops by being woven over wires of the breadth of the cloth.

Knight's American Mechanical Dictionary defines "pile fabric" as—

One in which a looped weft is formed by wires, to be afterwards cut, as in velvet and in Wilton carpet, or left in loops, as in Brussels carpet.

It would appear to be clear that within these definitions the merchandise here in question would be appropriately called a pile fabric, unless it be found that the term is used in a different sense in the statutes. In 1890 the tariff act (par. 396 of Schedule K) imposed a duty—

on * * * plushes and other pile fabrics, all the foregoing composed wholly or in part of * * * the hair of the camel, goat, alpaca, or other animals.

And in the case *In re* Herman (52 Fed., 941, sc. *In re* Herman, 56 Fed., 477) on appeal the question arose as to whether astrakhans were pile fabrics within the meaning of this provision. They were held not to be pile fabrics. But this holding was based upon commercial testimony, tending to show that they were not so known to the trade. That such was the scope of the decision is apparent from a brief quotation from the opinion of Wallace, C. J., in 56 Fed., at page 478:

The question in the case is wholly one of fact, viz, whether fabrics like the importations are pile fabrics within the commercial sense of the term obtaining at the date of the passage of the tariff act. The act of 1890 is the first tariff act in which the term is used in the enumeration of dutiable subjects. It occurs in three schedules of the act, being used not only in the schedule referred to but also in the cotton and silk schedules.

The court then proceeded to an examination of the testimony upon the subject of whether these goods were in a commercial sense excluded from the category of pile fabrics, and the conclusion in the case is that although the evidence indicates that according to the understanding of weavers goods woven as were the importations in question are classed as pile fabrics, the weight of the evidence is decidedly that according to the understanding of commercial men generally they are not so classed.

It may be noted that this commercial understanding was apparently based upon the view that to constitute a pile fabric as commercially known it must present an appearance similar to that of plushes and velvets. In other words, that the loops must have been cut.

But in the later statutes, including the one in 1909, here under consideration, the language of the statute is different from that of 1890, and so far from indicating an adoption of the judicial interpretation placed upon the term "pile fabric" (if it may be regarded as a judicial interpretation of the term, as it would be had it not rested entirely upon the question of commercial usage as a question of fact), the Congress enlarged the term by providing in paragraph 525 a tariff on "plushes, velvets, velveteens, corduroys, and all pile fabrics, cut or uncut, whether or not the pile covers the entire surface." These words are clearly broad enough to include any pile fabric that falls within the common understanding of that term which may be gathered from the lexicographers and was certainly intended to give

the term a broader meaning than that ascribed to it in the case *In re* Herman, based upon commercial testimony. There could be no such thing as an uncut pile fabric which would answer to the definition as fixed by the commercial testimony.

It is to be noted that in *In re* Downing (56 Fed., 815) astrakhans were held by Judge Lacombe, who decided the Herman case at the circuit, to fall within the definition of pile fabrics. In that case there was no commercial testimony to control the decision, and the case was evidently determined as depending upon the common or ordinary understanding of the term "pile fabrics."

It is suggested, however, in this case that the evidence shows that this fabric is not capable of being cut, and that for this reason it should be held excluded from the paragraph. We do not think its susceptibility of being cut is essential. Congress evidently had in mind two classes of pile fabrics, one of which is cut and presents a surface similar to velvet and plush, the other like astrakhan or Brussels carpet, which present a loop surface. To distinguish between the two classes the words "cut or uncut" were used, and the use of these words plainly includes all such as are uncut as well as those which are cut. The fact that the word "uncut" is uséd does not, in our judgment, indicate a purpose to restrict the fabrics to such as are susceptible of being cut, as the broad purpose of the provision is to be considered, and is evidenced by the use of the words "all pile fabrics." These of themselves would be sufficient to cover the case. But in order to make the provision still more clear, and with the evident purpose of excluding the limitation fixed by the Herman case, the words "cut or uncut" were added. These were not, as we think, in view of what had preceded, namely, the provision for all pile fabrics, introduced for the purpose of restriction, but rather for the purpose of making the provision still more clear.

The decision of the Board of General Appraisers sustained the claim of the Government that these fabrics are pile fabrics, and this decision is *affirmed*.