UNITED STATES *v.* JACKSON (No. 6). UNITED STATES *v.* PISANI (No. 47). UNITED STATES *v.* TRAITEL MARBLE CO. (No. 48). UNITED STATES *v.* BOCKMANN (No. 49). UNITED STATES *v.* ROSSMAN (No. 50).[1]

HAUTEVILLE, ISTRIAN AND THE LIKE STONES, MARBLE.

1. Where there is a later importation of merchandise identical in kind with a former importation and a new and different issue is presented as to the true character of the importation, this court will, in reaching a decision, review all the testimony (declining to follow Bockmann *v.* United States, 158 Fed. Rep., 807; T. D. 28784).

2. Hauteville, Istrian, and other like stones being a granular substance, capable of a high degree of polish and susceptible of use for decorative purposes, are not limestones, but marble, and were dutiable under paragraph 114, tariff act of 1897 and not under paragraph 117 of that act.

United States Court of Customs Appeals, July 25, 1910.

TRANSFERRED from the United States Circuit Court of Appeals, Second Circuit, G. A. 6856 (T. D. 29496).
[Reversed.]

*D. Frank Lloyd*, Assistant Attorney General (*Chas. D. Lawrence* on the brief), for the United States.

*Walden & Webster, Curie, Smith & Maxwell, Comstock & Washburn*, and *Hatch & Clute* for appellees.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

SMITH, Judge, delivered the opinion of the court:

It appears from the record in this case that there was imported into the country at the port of New York by various importers a certain class of stone known by the several names of "Istrian," "Cava Porto," "Cava Bandiera," "Hauteville," "Cava Romana," "Basseville," "Pierre Calciere," and "Echaillon." It is practically agreed and the overwhelming weight of testimony is to the effect that the

[1] Reported in T. D. 30849 (19 Treas. Dec., 874).

stones designated by these different names are chemically and structurally the same and that with the exception of some variation in color there is no marked distinction between them.

The importations were assessed by the collector as marble in block at 65 cents per cubic foot under the provisions of paragraph 114 of the tariff act of 1897. The importers protested that the merchandise should have been assessed at 12 cents per cubic foot as limestone or other building or monumental stone under the provisions of paragraph 117 of the same act.

As there was no material difference between the stones either as to texture, susceptibility to polish, or in the uses to which they might be applied, and inasmuch as the United States Circuit Court of Appeals had already decided in the case of Bockmann v. United States (158 Fed. Rep., 807) that Hauteville stone was not a limestone with a crystalline granular structure and therefore not assessable for duty as marble, the Board of General Appraisers, without making any express finding of fact as to whether the stones were or were not crystalline granular limestone, held the judgment in that case to be controlling and sustained the protest.

From this decision an appeal was taken by the Government to the United States Circuit Court for the Southern District of New York, which, after restating its original opinion that the Hauteville stone was a limestone "altogether too susceptible to a high polish and too advantageous in use as an interior decorative stone, too granular and too crystalline not to be segregated and separated from such stones as freestone, granite, sandstone, etc.," held that the appellant had evidently failed to convince the board that the importations were of that character and, applying the law laid down by the circuit court of appeals, affirmed the board's decision.

From the judgment of affirmance the Government took an appeal to the United States Circuit Court of Appeals, which appeal having been certified to this court under the provisions of the tariff act of August 5, 1909, is now submitted for determination.

Only one real issue—one of fact—is raised by the appeal: Are the imported stones marble—that is, limestone with a crystalline granular structure, as claimed by the Government, or are they just limestone, building or monumental stones in the commercial or in the ordinary meaning of those terms, as contended by the importers?

Counsel for the appellees insist that this issue has been already definitely decided by the circuit court of appeals and that its decision holding such stones to be limestone and not marble should not be disturbed, especially as the Board of General Appraisers has found the facts of the present case against the Government.

The Bockmann case was tried before the Board of General Appraisers on the assumption that Hauteville and similar stones *were known to*

*the trade as marble,* and six witnesses were produced by the Government to sustain its contention in that behalf. *No testimony whatever was offered showing or tending to show that the importation was actually marble—that is to say, crystalline limestone with a granular structure.*

The importers introduced seven witnesses engaged in the marble business, who testified that the stones were commercially known as stone *and not as marble,* and that a limestone to be recognized in the trade as a marble must be a crystalline limestone, susceptible of a high polish, with veinings, markings, and colorings fitting it for decorative purposes. These witnesses further declared that the Hauteville stone, which was the stone under consideration in the Bockmann case, was a "monotone," wholly without distinctive markings or colorings, and that while *sometimes* used for ornamental work and *sometimes* called a marble, it was not *generally* regarded by the trade as a marble.

On the issue of fact thus made up the circuit court of appeals very properly held that a trade designation had not been made out, and decided that as the Government had not shown that the Hauteville stone was actually a marble—that is, a crystalline limestone with a granular structure—or that it was anything more than a high-grade limestone, ornamental and polishable, the importation could not be removed from the limestone paragraph and classified as marble.

We are of the opinion that while this decision closed the door on further discussion in the Bockmann case it did not finally conclude either party as to a subsequent importation of the same material or preclude either of them from endeavoring in a later case to sustain by further and better evidence the very issues which had previously failed for lack of probative facts or want of sufficient proof. Much less did it bar the Government or importers from tendering a new issue or from trying the matter on a theory not contemplated in the original controversy.

Although it was the clear intent of Congress that this court should have power to review the facts, we find no fault with the general proposition that the determination of the Board of General Appraisers as to doubtful questions of fact involving the intelligence or credibility of witnesses should be respected and that no finding of fact by the board unless clearly contrary to the weight of evidence or wholly without evidence to support it should be disturbed. *In re* Van Blankensteyn (56 Fed. Rep., 474); United States *v.* Edgar C. Riebe (T. D. 30766, *supra*, p. 19).

As, however, the Board of General Appraisers evidently considered that Bockmann *v.* United States (*supra*) was decisive of the issues here involved and therefore made no findings of fact, it would seem that this court, which does not accept the Bockmann case as conclusive on the facts, must of necessity review the evidence sub-

mitted to the board if it is to reach any settled opinion as to the true nature and character of the importation.

Such a review, which includes an examination of the testimony given in the Bockmann case, a part of the record, discloses that 13 witnesses testified on behalf of the Government as to the nature, character, and uses of the merchandise under discussion. Some of these witnesses were managers and some superintendents of marble quarrying concerns, some were importers of marbles, some were wholesale or retail dealers in foreign and domestic marbles, others were sawyers, cutters, polishers, or finishers of marble. None of them had less than 18 years and most of them more than 25 years of experience in the business of dealing with marble or preparing it for use. Ten of these witnesses testified that the stones in controversy were limestone with a crystalline granular structure, and all of them, without exception, declared that they were actually marbles; that they were known to the trade as such; that they were susceptible of a high polish, and that they were not only suited for decorative and ornamental work, but that they were actually imported into and used in this country for that exclusive purpose.

As against the case presented by the Government the importers produced eight witnesses having a long but probably a somewhat less varied experience with marble than those who gave evidence for the appellant. Of these eight witnesses only three gave any direct or positive opinion as to the chemical or structural composition of the merchandise which was the subject of protest. Robert Rossman and C. D. Jackson, appellees, testified that stones of the Hauteville and Basseville type were not crystalline limestone at all; Edmund Otis Hovey, a geologist, declared that they were not crystalline but subcrystalline limestone, and not granular, because such crystals as they contained were cemented together by some material other than that of which the crystals were composed. Rossman and Hovey both admitted, however, that some of the exhibits submitted did contain crystals, and Benjamin D. Traitel testified that the stone had a crystalline texture. A. E. Bockmann said that Cava Romana is crystallized.

Two of the witnesses, William K. Fertig and Abraham E. Bockmann, an importer, declared that the stones were not susceptible of a high polish. J. A. Pisani, Robert Rossman, Lincoln Peirce, and Benjamin D. Traitel, all importers, and Arthur Schilbach, a witness in their behalf, testified that the stones *were* susceptible of a high polish and would take as high a polish as marble. Pisani, Rossman, Fertig, and Schilbach admitted that the stones are used in this country for decorative purposes. Seven of the witnesses for the importers testified that in the trade the stones were not recognized as marble and

that commercially marble is distinguished from ordinary limestone by veinings, markings, or colors which make it available for decorative or ornamental purposes. C. D. Jackson, importer and appellee, declared in the Bockmann case that these stones *were* known to the trade as marble and were used in this country for the same purposes as marble.

From all this it would seem to be clearly established by a preponderance of credible evidence:

First. That all these stones are limestone with a crystalline granular structure;

Second. That they are susceptible of a high polish; and

Third. That they are not only decorative and ornamental in effect, but that they are imported into and used in this country for that purpose and none other.

As 14 credible witnesses out of 21 testified that the imported merchandise is known to the trade as marble, we do not feel justified in finding that it is definitely, uniformly, generally, or even usually known as stone, limestone, building stone, or monumental stone. Considering all the evidence and accepting the most restricted definition of marble fixed by the standard authorities and by the testimony for the Government and the importers, to wit, that marble is a crystalline limestone or crystallized carbonate of lime susceptible of a high polish and decorative or ornamental in effect, it is evident that the importation is one of marble and should be so classified.

Judgment *reversed.*