UNITED STATES *v.* SCHUMACHER & Co. No. 741).[1]

VELVETS OR VELOURS—PILE FABRICS.

A commercial designation was clearly shown. Woven fabrics commonly known as figured "velvets," or "velours," composed wholly or in chief value of silk, the face of the fabric, having substantially a pile surface, are dutiable under paragraph 399, tariff act of 1909, according to their weight per square yard, as "velvets  *  *  * and other pile fabrics."—McGibbon case, G. A. 3686 (T. D. 17638; *Ibid.,* 107 Fed. Rep., 265), distinguished.

United States Court of Customs Appeals, May 27, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7248 (T. D. 31756).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, on the brief), for the United States.

*Brooks & Brooks* (*Frederick W. Brooks, jr.,* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

Under the tariff act of 1909 the appellees imported into this country certain consignments of woven piece goods, designed for use as upholstery or decorative fabrics.

----

[1] Reported in T. D. 32586 (22 Treas. Dec., 986).

The appraiser reported that the goods in question were composed in chief value of silk, dyed in the thread or yarn, not weighed in the dyeing to exceed the original weight of raw silk, and containing over 45 per cent of silk in weight. The appraiser further reported that the goods had in part a pile surface, but were not as a whole substantially pile fabrics; that they were known as upholstery or drapery material and were not commercially known as velvet or pile fabrics. The goods were accordingly returned for duty at $3 per pound, but not less than 45 per cent ad valorem, under the appropriate provisions of paragraph 399 of the act.

The importers objected to the proposed classification and assessment, and contended that the goods were velvets weighing over 5¾ ounces per square yard and were dutiable at $1.50 per pound, or not less than 45 per cent ad valorem, under the applicable provisions of paragraph 399.

The collector classified the importation in accordance with the finding of the appraiser, and accordingly assessed duty thereon at $3 per pound.

The importers protested against this ruling, and on appeal the Board of General Appraisers sustained the protest. The Government now prays for a reversal of that decision of the board.

The following is a copy of those parts of paragraph 399 of the act of 1909 which define the classifications severally contended for by the respective parties:

399. Velvets, chenilles, and other pile fabrics, not specially provided for in this section, cut or uncut, composed wholly or in chief value of silk, weighing not less than five and three-fourths ounces per square yard, one dollar and fifty cents per pound.

\*        \*        \*        \*        \*        \*        \*

Woven fabrics in the piece, composed wholly or in chief value of silk, \* \* \* if dyed in the thread or yarn, and the weight is not increased in dyeing beyond the original weight of raw silk, \* \* \* if containing more than forty-five per centum in weight of silk, three dollars per pound. \* \* \* But in no case shall \* \* \* any of the goods enumerated in this paragraph \* \* \* pay a less rate of duty than forty-five per centum ad valorem.

As has been stated, the collector classified the importations as woven fabrics in the piece under the second of the foregoing provisions, holding that the surface of the goods was but partly covered with pile and therefore that the goods were not pile fabrics under the first provision.. This classification was protested by the importers and reversed by the board upon appeal, the board holding upon the evidence that the testimony established a commercial designation of the goods as pile fabrics, and that this classification was more specific than woven fabrics in the piece.

At the hearing before the board the importers introduced the testimony of several witnesses and clearly established the fact that the goods in question had been commercially known as pile fabrics for a period of more than 30 years last past, notwithstanding the fact

that the pile did not cover the entire surface of the goods; that during all that time this commercial designation had been definite, uniform, and general; that such goods had never been known in the trade as tapestries; and that tapestry goods had no pile at all upon their surface. The witnesses had been engaged in business in this country during the period mentioned, regularly dealing in such goods, and they directly identified the importations as pile fabrics and as so known to the trade.

Samples of the importations were filed as exhibits in the case, and from them it appears that the goods in question are almost entirely covered with a pile surface. In several of them there are small areas of the surface which are filled by flat threads by means of which certain designs are worked out. One of the samples shows a fabric which originally was entirely covered with an erect pile surface, upon which, however, certain figures have been embossed by means of a hot cylinder. Within the area of these figures the pile upon the goods is pressed down to a flat surface, but it appears that this would become erect again if the goods became wet.

The Government on its part introduced no evidence in contradiction of the testimony submitted by the importers, but rested solely upon the claim that the prior decisions upon pile fabrics, the long-continued practice of the department following them, and an alleged legislative approval of these in the phraseology of paragraph 399 and kindred paragraphs of the act of 1909, all unmistakably demonstrated that Congress intended the term "pile fabrics" as used in that act to include only such goods as had erect pile upon their entire surface without any break at all in its continuity.

The following reported decisions are cited by the Government in support of this claim: McGibbon & Co. *v.* United States (T. D. 17638), McGibbon & Co. *v.* United States (107 Fed. Rep., 265), United States *v.* McGibbon & Co. (113 Fed. Rep., 1021), Sloane *v.* United States (T. D. 25037), McGibbon & Co. *v.* United States (T. D. 25197), Robinson *v.* United States (T. D. 26149), and Stroheim & Romann *v.* United States (T. D. 26447).

The case named in the first three citations above given, being the case of McGibbon & Co., arose under the tariff act of August 27, 1894, and was decided by the board in 1896; the first citation is the board's decision, the next two are those of the Circuit Court and the Circuit Court of Appeals. The goods involved in the McGibbon case had a pile surface which covered about one-half of their face. The question was whether such goods were pile fabrics as that term was used in the tariff act of 1894. The board held that the goods were pile fabrics, notwithstanding the fact that their surface was not entirely covered with pile. Upon appeal the Circuit Court held that—

Inasmuch as the fabric as a whole is not substantially a pile fabric, and is not commercially known as such, the fact that a portion thereof has a pile surface is not sufficient to constitute it a pile fabric.

The decision of the board was therefore reversed by the Circuit Court, and this decision of reversal was afterwards affirmed by the Circuit Court of Appeals, upon the same opinion.

The following extract from the decision of the Circuit Court will more fully disclose its meaning:

> The merchandise in question is a manufacture of silk and cotton, silk component material of chief value, which was within the provisions of paragraph 302 of the act of 1894, but was classified for duty as "pile fabrics" at $1.50 per pound under paragraph 299 of said act. These articles are known as "tapestries," and are not commercially known as "pile fabrics." In fact, they are fabrics made of cotton and silk, a certain portion thereof, namely, about one-half, having a pile surface. Inasmuch as the fabric as a whole is not substantially a pile fabric, and is not commercially known as such, the fact that a portion thereof has a pile surface is not sufficient to constitute it a pile fabric.

From the date of the last decision just cited up to the tariff act of 1909, the department continuously classified as "pile fabrics" only such goods as had entire or unbroken pile surfaces, and such fabrics as these at bar were therefore held not to be pile fabrics.

The same question afterwards came before the board in the other cases cited in the foregoing list, except that the goods therein involved were severally composed of cotton, silk and cotton, and silk and metal, instead of silk alone. In each of those cases the board had before it certain goods with partial pile surfaces, and in respect to these followed the McGibbon decision, holding that the goods were not pile fabrics. There was no testimony introduced in any of these cases, so far as the reports thereof disclose.

The Government also calls attention to the fact that these decisions were cited in Notes on Tariff Revision, page 504, and to the further fact that paragraphs 325 and 353 of the act of 1909, relating, respectively, to cotton and flax goods, in providing for pile fabrics composed of those materials, specifically add the provision, "whether or not the pile covers the entire surface." There is no such provision respecting pile fabrics composed of silk in the tariff act of 1909, nor was there such a provision in the cotton or flax paragraphs of any preceding tariff act.

The Government contends that the decision in the McGibbon case, the departmental practice founded upon it, the other decisions of the board following it, the change in phraseology in the cotton and flax paragraphs of the act of 1909, the use of the former phraseology unchanged in the silk paragraph of that act, taken together, plainly show that Congress used the term "pile fabrics," standing alone, to include only such fabrics as had an entire or unbroken pile surface, and not those whose surfaces were but partially covered with pile. Acting upon this claim, the Government did not introduce any evidence before the board in the present case, but rested solely upon their claim that the legislative use of the disputed term was so mani-

fest that testimony of a commercial designation should not be received to control it.

However, there are several considerations which incline the court against this contention. In the first place, the McGibbon case differed from the present one in important particulars. In that case the goods were but half covered with pile, and this fact led the court to say that "the fabric as a whole is not substantially a pile fabric." In the present case the goods are almost entirely covered with pile, one fabric being entirely so covered, but having depressions caused by a hot-cylinder process. The question therefore arises whether in view of this difference the McGibbon decision would authorize the court in the present case to say that the goods now before the court are not as a whole substantially pile fabrics. In the second place in the McGibbon case there was virtually an absence of testimony upon the subject of commercial designation of the importations. A single witness was examined upon the subject, and his testimony is incorporated in the present record. The testimony of the witness was so meager and unsatisfactory concerning commercial designation that it furnished no lawful evidence whatever upon that subject. The Circuit Court held that the "articles are known as 'tapestries,' and are not commercially known as 'pile fabrics.'" In the present case the testimony concerning commercial designation is clear, and fully proves that the goods in question have been known as pile fabrics for more than 30 years.

It is true that the department regarded the McGibbon case as covering goods like those at bar, and that such goods were thereafter, under the tariff act of 1897, classified as outside of the provision for pile fabrics. But the court does not conclude from this fact that other importers were thereby precluded from contending upon other importations that such goods as these were commercially known as pile fabrics, nor from submitting their proofs in support of such a contention. The fact that the goods involved in the McGibbon case were not found to bear the commercial designation of pile fabrics left it nevertheless open to any importer at any time thereafter to make the claim that such goods as those now in question had that trade name and to offer his proofs in support of that contention.

It may again be observed that the board decisions first above cited as additional authority were apparently decided without additional evidence and rested wholly upon the McGibbon case. What is said above concerning that case applies likewise to these.

The changes made in the phraseology of the cotton and flax paragraphs in the act of 1909 are noted, and the court finds them to be consistent with the Government's claim, but, on the other hand, they can hardly be regarded as themselves authority for that claim. The modifying phrase, "whether or not the pile covers the entire surface,"

first appearing in the act of 1909 in the cotton and flax paragraphs, may have been added by Congress for the purpose of more clearly specifying the meaning in which the term "pile fabrics" had formerly been used, or it may have been added as a substantial modification of that term. The change in phraseology is consistent with either theory, but does not itself substantially tend to establish either.

It may further be noted that the present importers are not foreclosed from their contention, because other importers in other cases formerly maintained a directly opposite claim, even though the present importers personally may have profited by the practice thereby established.

The record therefore fails to disclose such a constructive meaning of the disputed term as to take the case out of the rule for the classification of merchandise according to its commercial designation, and the case therefore presents itself to the court simply as one wherein a commercial designation was clearly proven by competent evidence and was properly given a controlling effect by the board.

In this view of the case the court finds no error in the record, and the decision of the board is *affirmed*.