STRAUS & CO. ET AL. *v.* UNITED STATES (No. 1569). UNITED STATES *v.* STRAUS & CO. ET AL. (No. 1570).[1]

1. EVIDENCE—PRESUMPTION—BURDEN OF PROOF—COMMERCIAL DESIGNATION.
    He who contends that a term used in a tariff act has a commercial meaning which is different from its common meaning assumes the burden of maintaining his contention by a fair balance of the evidence.
2. EVIDENCE—COMMERCIAL DESIGNATION A QUESTION OF FACT.
    Either party may establish, if he can by proper proof, what he conceives to be the commercial meaning of a tariff term, even though it may differ from the com-

mercial meaning which has been judicially attached thereto in another case litigated by a different importer. A commercial meaning established in one case will not be conclusively presumed to exist in another case where the parties are not the same.

3. ADMINISTRATIVE PRACTICE—COMMERCIAL DESIGNATION.

An established administrative practice can not overcome full proof of a commercial designation, for, if so, it would lie in the power of the administrative to defeat the legislative, since tariff acts are held to be enacted in the sense of the commercial meanings of their terms.

4. CONSTRUCTION AIDED BY CONTEXT.

By the language of paragraph 358, tariff act of 1913, "embroideries * * * and all articles or fabric or fabrics embroidered in any manner by hand or machinery" Congress discloses a purpose to place hand embroideries and machine embroideries on a certain parity with each other.

5. CONSTRUCTION AIDED BY CONTEXT.

The comparatively high duties imposed upon embroideries and the comparatively low duty imposed upon "embroidery cottons" by the tariff act of 1913 indicate a congressional purpose to encourage the embroidery manufacturing industry of this country, whether by hand or machinery.

6. CONSTRUCTION, PARAGRAPH 251, TARIFF ACT OF 1913—"EMBROIDERY COTTONS."

The term "embroidery cottons," as used in paragraph 251, tariff act of 1913, does not include only those used in hand embroidery, nor is it limited to a commodity imported only in skeins.

7. MACHINE EMBROIDERY COTTONS.

Cotton yarns used in an embroidery machine for executing the embroidery design on the face of the fabric are dutiable as "embroidery cottons" (par. 251, tariff act of 1913) and not as "cotton thread and carded yarn, warps, or warp yarn" (par. 250).

8. MACHINE EMBROIDERY COTTON—USE.

Cotton yarns used in an embroidery machine to lock the embroidery stitch on the back of the fabric are in fact used as "embroidery cottons." An importation of such yarn, wound upon bobbins so that it can be used only for this purpose, is dutiable as "embroidery cottons" (par. 251, tariff act of 1913), notwithstanding that the larger part of such yarns is used for other purposes.

9. FIVE PER CENT DISCOUNT—AMERICAN VESSELS.

Goods imported in American vessels are entitled to 5 per cent discount under subsection 7 of paragraph J, section 4, tariff act of 1913.

10. FIVE PER CENT DISCOUNT—BELGIAN VESSELS.

Goods imported in Belgian vessels are entitled to 5 per cent discount under subsection 7 of paragraph J, section 4, tariff act of 1913.

United States Court of Customs Appeals, January 22, 1917.

CROSS appeals from Board of United States General Appraisers, G. A. 7710 (T. D. 35314).
[Modified.]

*Bert Hanson,* Assistant Attorney General (*Luke Lamb,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Albert H. Washburn* of counsel) contra.

[Oral argument Oct. 11 and 12, 1916, by Mr. Hanson and Mr. Washburn.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

These cases are cross appeals from a decision of the Board of General Appraisers touching the classification of cotton yarns of various grades and sizes. The Board divides the merchandise into two primary

classes: (1) That which is used to execute the embroidery design on the face of the fabric; (2) that which is used to lock the embroidery stitch on the back of the fabric. This seems to be a suitable and sufficient division for the purpose of deciding the main issues raised by the appeals.

Assessment of the merchandise at appropriate rates according to the sizes of the yarns was made under paragraph 250 of the tariff act of 1913, the relevant part of which we quote:

> 250. Cotton thread and carded yarn, warps, or warp yarn, whether on beams or in bundles, skeins, or cops, or in any other form, * * * except spool thread of cotton, crochet, darning and embroidery cottons, hereinafter provided for.

The importers rely on paragraph 251, which reads as follows:

> 251. Spool thread of cotton, crochet, darning, and embroidery cottons, on spools, reels, or balls, or in skeins, cones, or tubes, or in any other form, 15 per centum ad valorem—

claiming the importations to be classifiable thereunder as "embroidery cottons."

As to class 1 the board sustained the importers' contention and therefrom the Government appeals; as to class 2, the contention of the Government was sustained and therefrom the importers appeal.

It appears that in Loeb *et al. v.* United States (150 Fed., 327), decided in the Circuit Court of Appeals in 1906, cotton thread of the size and twist known as "60/5-ply" put up on paper bobbins was under consideration. It seems that 60/5-ply means yarn or thread composed of five No. 60 threads or yarns laid together and we understand the merchandise in that case was similar to that of class 1, hereinbefore mentioned. In that case it was claimed by the Government that the merchandise was classifiable as an embroidery cotton under paragraph 303 of the act of 1897, providing for "spool thread of cotton, including crochet, darning, and embroidery cottons, on spools or reels containing on each spool or reel, * * *," etc.

The court concluded that the merchandise was not within the class of embroidery cottons mentioned in the paragraph and reversed the Circuit Court, which had sustained the Board of General Appraisers in a contrary conclusion. It held that there was nothing in the phraseology of the paragraph to indicate that the chief use or the individual use was the test for classification rather than the commercial meaning. It found upon the testimony (some of which was taken after the cause came to the Circuit Court) that the term "embroidery cottons" was a well-known commercial term when the statute of 1897 was enacted, from which, upon the evidence, it held that the merchandise before it was excluded. It appears from the testimony in that case that the prevalent opinion of the witnesses was that "embroidery cottons" in the trade then referred only to that which was used in *hand embroidery* and generally put up in skeins. Some witnesses in the case at bar substantially so testify.

The evidence in the Loeb case was moved into and is included in the record of the case at bar. The Government adopts the before-mentioned classes into which the board divides the merchandise and states the subjects of its appeal therein included as follows:

The yarns in class 1, the subject of the Government's appeal in suit No. 1570, are of different sizes, but all are of the character used in the so-called Schiffli embroidery machines for making designs on the face of fabrics. These yarns are represented by illustrative Exhibits B, E, and F, which exhibits are 40/2-ply, 50/5-ply, and 80/5-ply, respectively.

As to class 1, the board, in its opinion, said:

In the case at bar all the witnesses, both for the importers and the Government, were of the opinion that the merchandise covered by class 1 is both commonly and commercially recognized as embroidery cotton, and, considering all the testimony in the record, we find that the merchandise invoiced as "50/5 t′ red ", "40/2 ", "78/2 ", "80/5", and "70/5" is in fact embroidery cotton and that it is also commercially known as such. As to said merchandise, therefore, the protests are sustained.

The soundness of this finding of fact on all the evidence of record is not challenged by the Government, but the Assistant Attorney General nevertheless contends in substance that, because in the Loeb case it was held that there was nothing in the language to indicate that Congress intended to make use the test of classification, and because it was found as a fact upon the testimony that the term "embroidery cottons" in the paragraph was a well-known commercial term in the trade and commerce of the country and did not include the merchandise then before the court, already stated to be similar to class 1, it must be presumed that Congress subsequently to said decision legislated with reference to embroidery yarns upon the theory that they were not such unless for hand use. Supporting this contention, he cites a decision of the board in 1907, G. A. 6544 (T. D. 27915), following the Loeb case, and refers to the fact that the Treasury Department construed and applied the law in accordance with the Loeb case up to some time in 1914, thus including the act of 1909.

As to this line of argument it may be said that the decision in the Loeb case was based upon the question of commercial designation, the rule respecting which is that he who contends a term used in a tariff act has a commercial meaning (as such meaning is properly defined) which is different from its common meaning, assumes the burden of maintaining his contention by a fair balance of the evidence. The record in connection with the opinion in the Loeb case shows that in that court, under the statute then in force, another importer gave proof tending to show merchandise similar to that now before us was not within the commercial meaning of the term "embroidery cottons," and the court so found.

But we know of no rule that precludes either party to a case of this character from establishing, if he can by proper proof, what he

conceives to be the commercial meaning of a tariff term, even though it may differ from the commercial meaning which has been judicially attached thereto in another case litigated by a different importer.

That a commercial meaning different from the common meaning is to be ascertained and established only upon proof has been so often judicially declared that a citation of authorities is unnecessary, and we think it follows that a commercial meaning established in one case will not in the absence of proof be presumed to exist in another case where the parties are not the same.

It was said in United States v. Schumacher & Co. (3 Ct. Cust. Appls., 301; T. D. 32586) that the fact that the goods involved in a certain case "were not found to bear the commercial designation of pile fabrics left it nevertheless open to any importer at any time thereafter to make the claim that such goods as those now in question had that trade name and to offer his proofs in support of that contention."

That holding is not precisely in point to the issue we are now discussing, but illustrates that a commercial designation found in one case is not conclusively presumed to exist in another case, but again becomes the subject of proof. See also United States v. Jackson (1 Ct. Cust. Appls., 25; T. D. 30849) and United States v. Sheldon & Co. et al. (5 Ct. Cust. Appls., 371; T. D. 34555).

So far as the claimed administrative practice is concerned, if it be conceded as established it is entirely obvious that it can not overcome full proof of a commercial designation, because, if so, it is possible for the administrative department to defeat entirely tariff statutes which, it has been many times held by the highest judicial authority, are deemed to have been enacted in the sense of their commercial meaning. See Knauth, Nachod & Kuhne v. United States (6 Ct. Cust. Appls., 128; T. D. 35389) and United States v. Sheldon & Co., supra. If the only question were as to the common meaning of the term "embroidery cottons," while at first blush it would be. natural to suppose that the term at least included cottons used in making embroidery, nevertheless a long continued, uniform administrative interpretation to the contrary might be very persuasive if not convincing, but such is not the case before us.

Paragraph 303 of the act of 1897 made provision for embroidery cotton on spools or reels and also if otherwise than on spools or reels, while the corresponding paragraph 314 of 1909 expressly provided for such cotton on spools, reels, or balls, and in addition for it in skeins, cones, or tubes, all which terms are employed in paragraph 251 under consideration.

Under paragraph 197 of the act of 1909 embroidery machines were for a time given free entry.

Congress has in paragraph 358 of the act of 1913 provided for "embroideries * * * and all articles or fabric or fabrics em-

broidered in any manner by hand or machinery," thereby disclosing a purpose to place the hand and machine products on a certain parity.

The record here shows that since the evidence was taken in the Loeb case there has been a large increase in the use of machinery in embroidery manufacture and we can not believe that Congress intended the term "embroidery cottons," as used in paragraph 251, to cover only those used in hand embroidery, or to be limited to a commodity imported only in skeins. The comparatively high duties imposed upon embroideries suggests. the idea of encouragement to the embroidery manufacturing industry of this country, whether by hand or by machinery, and this is further indicated by providing that one of the necessary materials, viz, "embroidery cottons," should have a comparatively low rate. If any cotton yarn used in the embroidery process is denied this favor, thereby, to some extent at least, the apparent congressional purpose is evaded or set at naught.

We think the conclusion of the board hereinbefore quoted as to class 1 of the merchandise is right.

We proceed to consider the classification of class 2 as first hereinbefore described. This yarn is invoiced as "4/4 bobbins" and consists of .60/2-ply yarn wound in the form of bobbins and is suitable and intended for use in the shuttle of the Schiffli embroidery machine. In the finished embroidery this yarn or thread appears only on the back of the embroidery fabric, its function being to catch and bind the threads which produce the embroidery design.

The importers claim that this yarn is embroidery cotton in fact, that is, in common understanding, and also that in the bobbin form the evidence establishes that it is included commercially within the class of articles known to the trade as embroidery cottons. The Government, as to the latter part of the assertion, replies, and the importers concede it, that the commercial name for the article is "shuttle bobbins" or "bobbins."

It was well said by the board respecting the testimony as to commercial designation:

It further appears from the testimony that there are two trades dealing in cotton yarns used for embroidery—one which deals in art embroidery cotton put up in small skeins used for hand or household embroidery. and the other which handles the embroidery cottons for machine embroidery. The witnesses dealing in the art embroidery cotton seem to think that they handle the only commodity known in trade as embroidery cotton, while the witnesses dealing in machine embroidery cotton claim that the term includes all cottons used in embroidering, whether such embroidery is made by hand or machinery

After a careful examination of all the evidence we agree with the board that the merchandise of class 2 has not been shown to be within the commercial designation of embroidery cotton.

Is it such in fact?

The evidence requires the conclusion, which was, in substance, reached by the board, that this yarn, which is also as well described by the word "thread," is ordinary cotton yarn imported in various forms, such as skeins, cones, etc., as well as in bobbins, the chief use of the same being for purposes other than in embroidery, but that when imported in bobbins it is chiefly, if not wholly, used for embroidery purposes. There is some proof that the yarn of these importations has an especial, and for embroidery purposes an essential, twist not possessed by the same sized yarn otherwise imported or manufactured here, but we doubt if that is fully established by the evidence.

The issue, then, is this: Is a yarn the chief use of which is not for embroidery purposes, but which is, when imported in a particular form, such as bobbins in this case, designed to be used and in fact is used upon embroidery machines, and in the embroidery itself serving only the function of a back thread as already described, an embroidery yarn?

In answering this question it is our duty to consider the condition of the merchandise as imported and with reference to the use to which it is to be applied. There is no suggestion that in its imported condition, that is, upon the bobbins, it is commercially practicable to use this yarn or thread for any purpose other than in the manufacture of embroidery by machinery; and it is imported in a form that is designed to, and in fact does, upon the evidence, set it apart to such use and such use only. We think it would be an anomaly to say that this merchandise is not for embroidery purposes in fact and if so we are unable to see why it is not embroidery cotton in fact. The term "embroidery cottons" must relate to the yarns or thread used to produce the embroidery design, and those upon the back thereof are equally an integral part of the embroidery manufacturing process as those upon the front. Unless this be so, position merely, without regard to function or use, would determine the classification which might result in saying that a yarn which appeared upon the front would therefore be embroidery cotton, while if the same yarn appeared upon the back of the design, it would not. We are not unaware that the doctrine of chief use, when use is the controlling element, applies to the merchandise of a class as a whole, but we see no inconsistency between that rule and the conclusion we reach in this case. Of the entire bulk of the importation of yarns or threads of this size and class in the various forms in which it is imported the major use is for purposes other than the manufacture of embroidery, but in the *particular form* in which the merchandise before us is imported, its entire use is for embroidery purposes. By its winding upon bobbins it is, upon the record here, devoted, set apart, segregated, and used on embroidery machines to produce embroidery and appears to have no other practical commercial use.

We think the manifest purpose and intent of Congress, in view of the entire legislation on the subject, is, unless and until a different commercial meaning is *established*, to give to cotton yarns *in fact used for embroidery purposes only* the benefit of the statute.

As indicative of how this question must strike those engaged in the business, we quote briefly from the testimony of Mr. George S. Lings, a Government witness, who testified that he had been in the cotton-yarn business for 50 years, the first part thereof being as a manufacturer and for the last 30 years as a wholesale dealer in both domestic and foreign yarns, and personally familiar with the selling transactions of the same throughout the country. He testified that the merchandise in class 2 was not in the trade called "embroidery cotton"; that in the bobbin form he had known it only about five years; that the back thread was indispensable to machine embroidery. He also gave the following testimony:

You say there are so many different ideas of what embroidery cotton is or is not—do you mean that the test—that the use is the determining test?—A. The difference is the twist. Some people want more twists and others less.

Q. I mean would you designate a given yarn as embroidery cotton or as embroidery yarn according as to whether it was or was not used chiefly for embroidery purposes—that is so, isn't it?—A. As a rule; yes.

Q. As a rule?—A. Yes. Sometimes they call it by number and nothing else.

Q. But we are talking now about this class of articles which you know as embroidery yarn and embroidery cotton. I say simply the test is its use?—A. Yes, sir.

Q. If a thing is chiefly or principally used for embroidery purposes you think the trade would know it as embroidery cotton or embroidery yarn?—A. Yes, sir.

Q. That would be a fair test?—A. Yes.

Q. In other words, a test of use?—A. Yes.

We think this evidence conveys the impression that the witness would, but for his belief in a trade designation, designate this merchandise as in fact embroidery cotton, and the quoted evidence is but typical in effect of that of some other witnesses.

The Government points out that paragraph 250 provides for "cotton thread, whether on beams or in bundles, skeins, or cones or in any other form" as a reason why the merchandise of class 2 can not be classifiable under paragraph 251, but it should be noticed that the specific description is followed by the words, "except spool thread of cotton, crochet, darning, and embroidery cottons hereinafter provided for," while paragraph 251 expressly provides for the exceptions of paragraph 250, whether "on spools, reels, or balls, or in skeins, cones, or tubes, or any other form." Among other things it is this specific exclusion from paragraph 250 and the specific inclusion in paragraph 251 of embroidery cottons, which, of course, means embroidery cottons in fact, until a different commercial designation is established, that leads us to the conclusion that we have reached.

We hold that as to the classification of the merchandise embraced in class 1, as hereinabove set out, the judgment of the Board of Gen-

eral Appraisers ought to be, and it is, affirmed and that as to said class 2 it ought to be, and it is, reversed.

There remains for disposition the further questions as to whether a discount of 5 per cent on the duties should be allowed under subsection 7 of paragraph J of section 4 as to the merchandise covered by protest 740344, which was imported in a vessel admitted to registration under the laws of the United States, and also whether a like discount under the same statute should be allowed to the merchandise covered by protests 734045 and 734799, which was imported in vessels of Belgian registration. Upon these questions the board followed its conclusions in G. A. 7540 (T. D. 34246), allowing the discount upon merchandise imported in vessels admitted to registration in the United States and denying it to merchandise imported in ships of Belgian registration. This question of discount is not argued by counsel or considered here, except to say that, following our decision in the Five Per Cent cases (6 Ct. Cust. Appls., 291; T. D. 35508), we affirm the judgment of the board as to the merchandise imported in American bottoms and reverse it as to the merchandise imported in ships of Belgian registration.

Cause remanded to be proceeded with in accordance with this opinion.

*Modified.*