## WANAMAKER *v.* UNITED STATES (No. 2510)[1]

1. COMMERCIAL DESIGNATION—LEGISLATIVE SANCTION OF JUDICIAL CONSTRUCTION.

While tariff acts are generally to be construed according to the commercial understanding of the terms employed, such terms will be presumed to have the same meaning in commerce as in ordinary use. The rule that, by the reenactment in the same language of a prior statute, a former judicial interpretation thereof is approved, does not apply to a commercial meaning, because such meaning is a fact to be proved in each case, and must be shown to have been definite, uniform, and general, and not partial, local, or personal, prior to *and at the date* of the passage of the act.

2. EVIDENCE, PRESUMPTION FAVORS COLLECTOR.

The classification of kid-skin jackets as wearing apparel composed of fur implies that the goat skins of which they were made were fur in the common understanding.

3. GOAT SKINS INCLUDES KID SKINS.

The provision of paragraph 1420, Tariff Act of 1922, for wearing apparel of goat skins includes kid skins. *Seward* v. *United States,* 9 Ct. Cust. Appls. 4, T. D. 37842, distinguished.

4. RELATIVE SPECIFICITY—PARAGRAPH 1420, TARIFF ACT OF 1922—WEARING APPAREL OF GOAT SKINS AND WEARING APPAREL OF FUR.

Assuming a goat skin to be fur, the provision of paragraph 1420, Tariff Act of 1922, for wearing apparel of goat skins is more specific than that for wearing apparel of fur.

5. KID-SKIN JACKETS.

Dyed kid-skin jackets are wearing apparel of goat skins and not wearing apparel of fur, under paragraph 1420, Tariff Act of 1922.

United States Court of Customs Appeals, May 11, 1925

APPEAL from Board of United States General Appraisers, Abstract 48329

[Reversed.]

*Allan R. Brown* for appellant.
*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

[Oral argument March 24, 1925, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

Paragraph 1420 of the Tariff Act of 1922 contains, among others, the following provisions:

\* \* \* articles of wearing apparel of every description partly or wholly manufactured, composed wholly or in chief value of hides or skins of cattle of the bovine species, or of dog or goat skins, and not specially provided for, 15 per

---

[1] T. D. 40939.

centum ad valorem; articles of wearing apparel of every description wholly or in part manufactured, composed wholly or in chief value of fur, not specially provided for, 50 per centum ad valorem.

The question here is whether dyed kid-skin jackets should be assessed thereunder at 50 or at 15 per centum ad valorem.

The collector assessed them at the higher rate and the Board of General Appraisers sustained his action. The importer contends that the jackets should have been classified as wearing apparel of goat skins and assessed at the lower rate.

When the protest came on for hearing before the board it was stipulated by counsel that the appraiser's report (the answer to the protest) should be received in evidence, which having been done, the case was thereupon submitted.

The material part of that report is that the jackets are made of dyed kid skins.

Of course these jackets are wearing apparel, and the contention of the importer is that the first quoted part of paragraph 1420, providing for wearing apparel composed wholly of goat skins, more specifically describes the merchandise than does the provision for articles of wearing apparel composed wholly of fur, in the clause secondly above quoted. In support of this claim it is argued that the term "goat skin," in common understanding, includes the skins of young goats. As strengthening this view, importer urges that the provision for dog skins in the paragraph, if given its common meaning, would include skins of the young dog or puppy as well as of those dogs that have reached maturity, concluding that thereby Congress has given indisputable evidence that it meant to include the skins of young as well as old animals.

In other words, the importer's contention is that the expression "goat skins," in the common understanding, covers the skins of goats of all ages, and that, therefore, these jackets, being made of the skins of young goats or kids, are more specifically provided for in the clause first quoted than in the one following it.

The Government does not dispute this interpretation of the statute, but urges that, as goat skins and kid skins were by this court in *Seward* v. *United States*, 9 Ct. Cust. Appls. 4, T. D. 37842, found to be different commercial entities, that distinction will be presumed to continue, especially in view of the fact that the expression "goat skins" is used in paragraph 1420 in the same sense as in paragraph 348 of the tariff act of 1913 which was under review in the Seward case. That is, the Government claims that such reenactment implies a legislative adoption of the differentiation made by us between goat skins and kid skins in the Seward case.

The trouble with this argument, as pointed out by the importer, is that in that case the conclusion that goat skins and kid skins were

different commercial entities was based entirely upon evidence of commercial designation, in the absence of which it must have been held that the term "goat skins" covered the skins of both mature and immature goats.

But the Government further argues that when the commercial meaning of a tariff term describing merchandise has once been ascertained in a given case, it should be presumed to continue and be applied, without proof thereof, to subsequent importations of the same kind of merchandise even under statutes subsequently enacted.

We can not agree with this view of the law. The settled rule is that, while tariff acts are generally to be construed according to the commercial understanding of the terms employed, such terms will be presumed to have the same meaning in commerce as in ordinary use unless the contrary be shown. *Swan* v. *Arthur,* 103 U. S. 597; *Bloomingdale Bros.* v. *United States,* 3 Ct. Cust. Appls. 204, T. D. 32530; *Acker* v. *United States,* 1 Ct. Cust. Appls. 328, T. D. 31431.

There is no proof of commercial designation in this case.

The rule that, by the reenactment in the same language of a prior statute, a former judicial interpretation thereof is thereby approved, can apply so far only as the common meaning is concerned. It can not apply to commercial meaning, because that must always be established, like any other fact, by competent evidence introduced in the case in which such meaning is in issue. *Straus & Co.* v. *United States,* 7 Ct. Cust. Appls. 414, T. D. 36982; *United States* v. *Sheldon & Co.,* 5 Ct. Cust. Appls. 371, T. D. 34555; *United States* v. *Jackson,* 1 Ct. Cust. Appls. 25, T. D. 30849; *United States* v. *Oberle,* 1 Ct. Cust. Appls. 527, T. D. 31545.

The soundness of this view is manifest when we consider that the commercial designation which may be proven must be that which is in existence prior to *and at the date* of the passage of the act, at which time it must be definite, uniform, and general and not partial, local, or personal. *Maddock* v. *Magone,* 352 U. S. 368.

If the Government's contention be upheld, it follows that importers, as well as American manufacturers, wholesalers, and producers, may be precluded from proving or denying a commercial meaning the existence or nonexistence of which may determine their rights and concerning which they may never have been given a day in court.

In the case at bar the classification of the jackets as wearing apparel composed of fur implied that the goat skins of which they were made were fur in the common understanding.

Presuming this to be true for the purposes of this case, nevertheless, the jackets are more specifically described as wearing apparel composed of goat skins, because, assuming that goat skins are fur, they are only one of many kinds of fur.

From this it follows that the importer's protest should have been sustained.

The judgment of the Board of General Appraisers is, therefore, *reversed.*