The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* BALTIMORE & OHIO R. R. Co. (No. 3080[1])

---

[1] T. D. 42810.

United States Court of Customs Appeals, May 25, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles*, special attorney, of counsel), for the United States.
*Thomas J. Doherty* for appellee.
*John G. Lerch*, *amicus curiae*.

[Oral argument May 10, 1928, by Mr. Lawrence, Mr. Doherty, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The Baltimore & Ohio Railroad Co. entered at the port of Baltimore for the account of Mitsui & Co. (Ltd.), of New York, a shipment of alloy from India. It was designated in the invoice as *ferromanganese* and entered at the rate of $1\frac{7}{8}$ cents per pound on the manganese content under paragraph 302 of the Tariff Act of 1922 for ferromanganese containing more than 1 per centum of carbon.

Following instructions from the Treasury Department the collector liquidated the entry at $1\frac{7}{8}$ cents per pound on the manganese content plus 15 per centum ad valorem, as *manganese silicon*.

The appraiser's report reads as follows:

Merchandise covered by the protest consists of an alloy used in the manufacture of steel containing 6.4% carbon, 77.7% manganese, 2.45% silicon, 0.358% phosphorus, 0.019% sulphur. These figures are contained in the analysis certificate attached to invoice, dated at Jamshedpur, February 18th, 1926, and in so far as carbon, manganese, and silicon are concerned have been found by this office to be substantially correct by a test made of a sample. This merchandise was returned at $1\frac{7}{8}$¢ per pound and 15% under par. 302, Act of 1922, following instructions of the department dated February 18th, 1927, because of the fact that the alloy contains over 2% silicon.

The importer protested the collector's classification and assessment of duty. The United States Customs Court, Second Division, sustained the protest and held that the merchandise was not dutiable as invoiced and entered or as classified by the collector, but was dutiable under that portion of paragraph 302 of the Tariff Act of 1922, which provides for "all alloys used in the manufacture of steel not specially provided for, 25 per centum ad valorem."

Paragraph 302 reads as follows:

PAR. 302. Manganese ore or concentrates containing in excess of 30 per centum of metallic manganese, 1 cent per pound on the metallic manganese contained therein; molybdenum ore or concentrates, 35 cents per pound on the metallic molybdenum contained therein; tungsten ore or concentrates, 45 cents per pound on the metallic tungsten contained therein; *ferromanganese containing more than 1 per centum of carbon, 1⅛ cents per pound on the metallic manganese contained therein: Provided, That ferromanganese for the purposes of this act shall be such iron manganese alloys as contain 30 per centum or more of manganese;* manganese metal, *manganese silicon,* manganese boron, and ferromanganese and spiegeleisen containing not more than 1 per centum of carbon, 1⅛ cents per pound on the manganese contained therein and 15 per centum ad valorem; ferromolybdenum, metallic molybdenum, molybdenum powder, calcium molybdate, and all other compounds and alloys of molybdenum, 50 cents per pound on the molybdenum contained therein and 15 per centum ad valorem; ferrotungsten, metallic tungsten, tungsten powder, tungstic acid, and all other compounds of tungsten, 60 cents per pound on the tungsten contained therein and 25 per centum ad valorem; ferrochromium tungsten, chromium tungsten, chromium cobalt tungsten, tungsten nickel, and all other alloys of tungsten not specially provided for, 60 cents per pound on the tungsten contained therein and 25 per centum ad valorem; ferrosilicon, containing 8 per centum or more of silicon and less than 60 per centum, 2 cents per pound on the silicon contained therein; containing 60 per centum or more of silicon and less than 80 per centum, 3 cents per pound on the silicon contained therein; containing 80 per centum or more of silicon and less than 90 per centum, 4 cents per pound on the silicon contained therein; containing 90 per centum or more of silicon, and silicon metal, 8 cents per pound on the silicon contained therein; ferrochrome or ferrochromium containing 3 per centum or more of carbon, 3½ cents per pound on the chromium contained therein; ferrochrome or ferrochromium containing less than 3 per centum of carbon, and chrome or chromium metal, 30 per centum ad valorem; ferrophosphorus, ferrotitanium, ferrovanadium, ferrouranium, ferrozirconium, zirconiumferrosilicon, ferroboron, titanium, zirconium, chromium nickel, vanadium nickel, zirconium nickel, chromium vanadium, chromium silicon, zirconium silicon, calcium silicide, *and all alloys used in the manufacture of steel not specially provided for, 25 per centum ad valorem;* cerium metal, $2 per pound; ferrocerium and all other cerium alloys, $2 per pound and 25 per centum ad valorem; ductile tantalum metal or ductile nonferrous alloys of tantalum metal, 40 per centum ad valorem. (Italics ours.)

The Government has appealed to this court from the decision of the court below, and here concedes that the instruction of the Treasury Department and the action of the collector thereon, resulting in the classification of the merchandise as *manganese silicon*, were erroneous, and that the decision of the court below to the effect that

the importation was not manganese silicon was correct, but urges that the merchandise is, in fact, *ferromanganese*, as was originally claimed by the importer, and that the court below fell into error in holding as follows:

The decision in *Smillie* v. *United States*, 12 Ct. Cust. Appls. 365, T. D. 40520, precludes classification as ferromanganese.

We agree with the above-stated position of the Government. First, that the importation, as found by the court below, is not manganese silicon. It is shown that the importation contains 2.45 per centum silicon and it seems to be conceded, from every source, that to constitute manganese silicon the importation would be required to possess a far greater silicon content. Second, we think the record shows that the importation is "ferromanganese containing more than 1 per centum of carbon," and that it otherwise meets the requirement of the ferromanganese provision. Third, we think the court below fell into error in holding that the decision in the *Smillie* case, *supra*, precluded classification as ferromanganese.

The *Smillie* case involved the classification of two lots of a material which contained the following constituents:

|  | First lot | Second lot |
|---|---|---|
|  | *Per cent* | *Per cent* |
| Manganese | 76.54 | 75.55 |
| Silicon | 10.09 | 9.17 |
| Phosphorus | .145 | .109 |
| Carbon | 3.71 | 4.05 |
| Iron | 8.09 | 7.50 |

The competition in the classification was between the free list paragraph 518 of the Tariff Act of 1913 for *ferromanganese* and the catchall provision of paragraph 102 of the same act for "other alloys used in the manufacture of steel, not specially provided for in this section, 15 per centum ad valorem." In the court below the Government proved, by expert witnesses, without objection, that the term *ferromanganese* had a definite, uniform, and general trade and commercial meaning at the time of the passage of the Tariff Act of 1913, and that, under that definite trade understanding and designation of the term, the material was not and never could have been considered as ferromanganese. Their testimony showed that ferromanganese was a material used to eliminate oxygen in the making of steel; that no material of the kind could be considered ferromanganese which contained above 1 per centum of silicon, and that the carbon in standard ferromanganese would uniformly range from 5 to 7 per centum.

The court held, under that evidence, that the imported material was not ferromanganese, and that it had been properly classified by the collector under the catchall provision of paragraph 102.

It must be remembered that the *Smillie* case determined the proper classification of an alloy used in the manufacture of steel which was classifiable under the Tariff Act of 1913, and that the proof of the commercial meaning of the term at the time of the passage of the act was regarded as controlling. Proof as to what was or was not ferromanganese within the commercial understanding on October 3, 1913, and a decision of this court upon that proof can not possibly preclude the classification of an alloy as ferromanganese which is imported under an act passed September 21, 1922.

In the instant case there was no effort to prove that the imported merchandise, on and prior to the passage of the Tariff Act of 1922, was not commercially known as ferromanganese containing more than 1 per centum of carbon. But if there had been such proof, as we shall point out later, it could not properly have been regarded as controlling.

In *Wanamaker* v. *United States*, 13 Ct. Cust. Appls. 93, T. D. 40939, this court said:

But the Government further argues that when the commercial meaning of a tariff term describing merchandise has once been ascertained in a given case, it should be presumed to continue and be applied, without proof thereof, to subsequent importations of the same kind of merchandise even under statutes subsequently enacted.

We can not agree with this view of the law. The settled rule is that, while tariff acts are generally to be construed according to the commercial understanding of the terms employed, such terms will be presumed to have the same meaning in commerce as in ordinary use unless the contrary be shown. *Swan* v. *Arthur*, 103 U. S. 597; *Bloomingdale Bros.* v. *United States*, 3 Ct. Cust. Appls. 204, T. D. 32530; *Acker* v. *United States*, 1 Ct. Cust. Appls. 328, T. D. 31431.

There is no proof of commercial designation in this case.

The rule that, by the reenactment in the same language of a prior statute, a former judicial interpretation thereof is thereby approved, can apply so far only as the common meaning is concerned. It can not apply to commercial meaning, because that must always be established, like any other fact, by competent evidence introduced in the case in which such meaning is in issue. *Straus & Co.* v. *United States*, 7 Ct. Cust. Appls. 414, T. D. 36982; *United States* v. *Sheldon & Co.*, 5 Ct. Cust. Appls. 371, T. D. 34555; *United States* v. *Jackson*, 1 Ct. Cust. Appls. 25, T. D. 30849; *United States* v. *Oberle*, 1 Ct. Cust. Appls. 527, T. D. 31545.

The soundness of this view is manifest when we consider that the commercial designation which may be proven must be that which is in existence prior to *and at the date* of the passage of the act, at which time it must be definite, uniform, and general and not partial, local, or personal. *Maddock* v. *Magone*, 352 U. S. 368.

If the Government's contention be upheld, it follows that importers, as well as American manufacturers, wholesalers, and producers, may be precluded from proving or denying a commercial meaning the existence or nonexistence of which may determine their rights and concerning which they may never have been given a day in court.

In *Draeger Shipping Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 419, T. D. 41341, we approved the *Wanamaker* decision, and quoted exactly what we have quoted above.

The decision in the *Smillie* case, based as it was on proof of the commercial meaning of the term *ferromanganese* on and prior to the date of the passage of the Tariff Act of 1913, would not, under the above authorities, control the classification of the merchandise at bar, even if the ferromanganese provisions of the two Tariff Acts were identical. It should be observed that paragraph 518 of the Tariff Act of 1913 provided for "ferromanganese," without any words of limitation, description, or definition, while paragraph 302 of the Tariff Act of 1922 provides for "ferromanganese containing more than 1 per centum of carbon, $1\frac{7}{8}$ cents per pound on the metallic manganese contained therein: *Provided*, That ferromanganese for the purpose of this act shall be such iron manganese alloys as contain 30 per centum or more of manganese." It seems to us since this is, admittedly, an iron manganese alloy, and since it contains 77.7 per centum of manganese and contains more than 1 per centum of carbon, that Congress has fixed its own definition of ferromanganese, as far as the issues of this case are involved, and that, by congressional mandate, the importation must be classified as such.

We conclude, therefore, that the importation under consideration should be classified as ferromanganese under paragraph 302 and duty assessed at $1\frac{7}{8}$ cents per pound on the metallic manganese contained therein.

The judgment of the court below is *reversed* and the cause *remanded*, with instructions for further proceedings not inconsistent with the views herein expressed.