**TILTON TEXTILE CORP.**

v.

**UNITED STATES.**

C.D. 4670; Court Nos. 73–6–01404, etc.

United States Customs Court.

Oct. 15, 1976.

Siegel, Mandell & Davidson, New York City (Steven S. Weiser, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (Robert B. Silverman, New York City, trial atty.), for defendant.

Lamb & Lerch, New York City (David A. Golden, New York City, of counsel), as amicus curiae.

MALETZ, Judge:

This action involves the proper classification of "carded greige unbleached woven fabric, wholly of cotton, Style No. 44144," exported from Portugal and entered at the port of Norfolk, Virginia in 1969 and 1970. The merchandise was classified by Customs as a pile fabric, specifically, cotton plain-back velveteen, under item 346.15 of the Tariff Schedules of the United States (TSUS) and assessed duty at the rate of 25 per centum ad valorem.

Plaintiff contends that the import is not a pile fabric within the intendment of item 346.15 and its governing heading, but that it is properly classifiable as cotton woven fabric, not fancy or figured: not bleached and not colored: of number 14, under item 320.14, TSUS, as modified by Pres.Proc. 3822, which during the involved period carried a duty rate of 9.42 or 9.94 per centum ad valorem depending upon the date of entry.

The pertinent provisions of the Tariff Schedules of the United States read as follows:

Assessed under:

Schedule 3, Part 4, Subpart A:

> Pile fabrics, in which the pile was inserted or knotted during the weaving or knitting, whether or not the pile covers the entire surface, and whether the pile is wholly or partly cut or is not cut:
> Of cotton:

| | | |
|---|---|---|
| * | * | * * * * |

> Velveteens:

| 346.15 | Plain-back .......... | 25% ad val. |
|---|---|---|

Claimed under:

Schedule 3, Part 3:

Part 3 headnote:

> 1. This part covers all woven fabrics in the piece, of any width and with or without fast edges, including gauze and leno-woven fabrics, but does not include—
>> (i) any woven fabrics which are specially provided for in the provisions of part 4 of this schedule;

| | | |
|---|---|---|
| * | * | * * * * |

Subpart A:

| | | |
|---|---|---|
| * | * | * * * * |

> Woven fabrics other than the foregoing, wholly of cotton:
> Not fancy or figured:
>> Not bleached and not colored:

\* \* \* \* \* \*

| | |
|---|---|
| 320.14 | Of number 14 ....... 9.42% or 9.94% ad val. [depending upon the date of entry] |

## I

The pleadings establish the existence of all the elements necessary to support plaintiff's claim for classification under item 320.14. However, headnote 1(i) of schedule 3, part 3, *supra*, provides that articles classifiable under part 4 of schedule 3 are excluded from classification under part 3 of that schedule. Accordingly, it is plaintiff's burden to establish error in the presumptively correct classification of the merchandise under item 346.15.

Summarizing our conclusions at the outset, we find that, for tariff classification purposes, velveteen must have a certain characteristic weave or construction, described *infra*, and a raised pile, which may be wholly or partly cut or not cut, issuing from the fabric and covering its surface at least in part. Since the imported fabric presents no such pile face or effect, we conclude that it is not within the ambit of the pile fabrics provision under which it

was classified and is properly classifiable under item 320.14, as claimed by plaintiff.

## II

The testimony of record [1] conflicts on several points; however, it is not disputed that a common denominator of all pile fabrics is their construction, which consists of a foundation cloth made of warp and filling threads, and an extra set of threads, which may be warp or filling yarns, which form the pile. Essentially, there are two types of pile fabrics: warp pile fabrics, such as velvet, plush and terry fabrics, which are constructed with an additional set of warp threads; and filling pile fabrics, such as velveteen and corduroy, which are constructed with an extra set of filling yarns.[2]

Velveteen is constructed of a foundation or base cloth made of warp yarns interlaced with one set of filling (or weft) yarns known as binder picks or foundation picks and an extra set of filling yarns, variously referred to by the witnesses as pile threads, pile floats, filling picks, pile picks, filling floats, float picks and loops, which interlace with the warp yarns in a fixed pattern. Thus, the additional filling thread may, for example, interlace with one or more warp yarns and then "float" over the surface of the fabric covering three or more warp yarns to interlace again with the next one or more warp ends and repeat the floating processes. The floats are staggered in the weave, as shown in defendant's exhibit B, which was prepared by the witness Gray,

1. Plaintiff introduced 11 exhibits into evidence and called two witnesses: Theodore Stone, president of the plaintiff corporation, who had purchased the subject merchandise; and Francis K. Burr, associate director of Fabric Research Laboratories, Inc., a research and consulting firm for the textile industry in connection with textile fibers and fabrics, who now analyzes fabric defects and construction and acts as an expert witness in judicial and arbitration proceedings.

 Defendant had 9 exhibits received into evidence and called four witnesses: John Gray, chief fabric designer for Crompton Company, now the sole domestic manufacturer of velveteens; Alan A. Lowe, director of fabric development and new products for Greenwood Mills,

 Inc., a manufacturer of woven and knit fabrics which had also manufactured velveteen in the greige until 1971; Stephen Siegel, director of technical services, Cottons and Blends Division, of J. P. Stevens, Inc., a manufacturer of textile products, including pile fabrics; and Richard Lutzer, textile analyst and assistant chief of the Fibers Branch, U. S. Customs Laboratory.

 Two joint exhibits were received, and the official entry papers were admitted into evidence without being marked.

2. Although not limited thereto, the pile fabrics provided for by name in the tariff schedules are cotton corduroys and velveteens, terry fabrics, velvets, plushes, velours and chenilles.

and which, reproduced in part below, presents illustrative cross sections of what Gray calls a "single U" plainback weave, and a "W" plainback weave.[3]

CROSS SECTION OF VELVETEEN
WEAVES

SINGLE U PLAINBACK W PLAINBACK

The dots represent the warp yarn.

The numbered lines represent the filling yarn.

Woven warp pile fabrics are constructed so that they come off the looms with a raised pile, which may consist of cut ends or loops, on the surface of the fabric. Thus, velvet, which is usually woven by a so-called "double cloth" method, has a pile consisting of cut ends, whereas terry cloth is woven so that it may have cut or uncut loops, or a combination of both emerging from either side of the fabric.

Filling pile fabrics, on the other hand, come off the loom in the weave mill with their filling floats or pile picks uncut. Thus, fabrics with a velveteen or corduroy weave must have their floats cut in the finishing process in order to obtain the pile formation on the fabric surface. When the pile picks which (as noted) consist of extra threads are cut, the foundation fabric remains undisturbed.

The pile on velveteen usually presents an overall smooth face because of the staggered system of filling floats whereas in corduroy, because of the arrangement of the filling floats, the pile consists of ridges or wales.

The velveteen woven fabric that comes off the looms is a greige goods which, for coversion into cut finished velveteen, is sent to a finishing plant where the filling floats are cut with knives to create a pile on the face of the fabric. The fabric is also subjected to other finishing operations which may include dyeing, bleaching and the application of an adhesive or other substance to keep the cut pile from shedding.

There is some limited commercial use for greige uncut fabric. Thus, the witness Gray testified that the greige cloth manufactured by his company has been sold at his factory's retail stores for use as draperies or curtains. The greige cloth is also capable of being converted into something

**3.** Lines 1 and 5 in each column represent the warp and filling yarns which form the founda- tion cloth, and lines 2, 3 and 4 represent the staggered filling floats.

other than cut velveteen, such as a napped fabric.[4]

Good quality dress velveteens have a minimum of 200 filling yarns per square inch but poorer quality velveteens of lesser density, i. e., under 200 filling yarns per inch, have been made and sold for use as background display material.

### III

Turning to the merchandise in issue, it is undisputed that it is a woven greige cotton fabric constructed of warp yarns or threads and two sets of filling yarn, one of which is used as a ground filling yarn with the warp yarn to form the foundation fabric, and the other, consisting of pile filling yarns, used as filling floats in a weave characterized by Gray as a "double U" type plainback construction, a cross section of which is shown on defendant's exhibit B and reproduced below. In this particular weave, the pile pick is interlaced under two warp ends and floats over four threads. The fabric has 144 filling yarns per inch.

### DOUBLE U PLAINBACK

Lines 2, 3 and 4 represent the filling floats.

After importation, plaintiff, a textile converter, dyes, naps and imparts a water repellent finish to the fabric, which is then sold for use in the manufacture of outerwear garments.

The parties differ, in the first instance, over whether the imported merchandise is of velveteen construction, plaintiff claiming that a filling pile fabric with only 144 filling yarns per inch lacks the requisite densi-

4. A napped cloth, as described by the witness Burr, is (R. 57):

 * * * one whose surface has been brushed with wire brushes; can be a sanding operation; can be a teaseling operation. The fibers of the surface have been disturbed by a rubbing action which produces a soft sueded type finish.

ty to be a "velveteen" within the meaning of item 346.15.

The heart of the issue, however is whether a greige filling pile fabric with uncut filling floats or pile can be a "pile fabric" within the intendment of the pile fabric provisions and their governing heading.

It is plaintiff's contention that a pile fabric is one which has a pile formation, consisting of yarns in cut or loop form, projecting from the surface, albeit covering only part of the surface; that a velveteen woven fabric, by virtue of its construction, does not have a pile formation until the extra filling yarns, viz., pile picks or filling floats, are cut in the finishing process; and that inasmuch as a greige velveteen, in its condition as it comes off the weave loom, lacks the requisite pile effect it is not a pile fabric within the ambit of the tariff schedules. Hence, even if the imported cloth were considered to be a greige velveteen, plaintiff's contention is that it is not a pile fabric since it does not have a pile.

Thus, plaintiff's witness, Burr, testified that velveteen in the greige condition is not a pile fabric in that the filling floats have not been cut to produce a pile on the surface, but that it is "potentially" a pile fabric as the floats can be cut to form the pile. In this connection, he stated on direct examination (R. 43–44):

Q. * * * You stated that an example of a cut weft pile fabric or filling pile fabric is a velveteen or corduory. Would you consider a velveteen or corduroy as a pile fabric if it is uncut?

A. No, it has no pile and, therefore, until it has been subsequently processed, it is simply greige goods and cannot be properly classified as a pile fabric.

Q. Why doesn't it have a pile?

A. Because the yarns of the fabric run parallel to the surface of the fabric. There are no projecting fibers, yarns, loops, from the surface of the fabric.

Q. Is a warp pile fabric, such as you have mentioned, considered to be a pile fabric if the loops are uncut?

* * * * * *

A. Well, in the case of a warp pile fabric, by its definition and method of manufacture, the pile is cut, as in the case of velvet, coming from the loom, and it is already a pile fabric. The terry cloth, with its loops projecting from the surface, is already a pile fabric because it has loops of yarns projecting from the surface of the fabric.

Q. Is terry a cut or uncut pile?

A. It can be either.

Upon questioning by the court, Burr added (R. 47–48):

JUDGE MALETZ: Now, in the greige condition, did I understand, from your testimony, that in that type of situation, the velveteen can be either a pile fabric or a non-pile fabric?

THE WITNESS: Well, it is potentially a pile fabric, but it isn't until the pile has been made by cutting of the filling yarns. The question is one of timing at that moment. It is not a pile fabric in the greige, but it can be subsequently processed to become a pile fabric.

Defendant's position, however, is that it is the weave or construction of a fabric which makes it a pile fabric; that the insertion of a pile pick or extra filling yarn in filling pile fabric during the weaving process creates a pile which has not been cut; and that the subject merchandise "is within the common meaning of the term *uncut velveteen filling pile fabric* as that term is used in the Tariff Schedules." (Defendant's brief p. 18, emphasis in original.)

In support of this position, defendant's witnesses testified that it is the weave which determines whether a fabric is a velveteen and that plaintiff's exhibit 1, a representative sample of the imported merchandise, is a velveteen because of its construction. They variously described the woven uncut cloth that comes off the loom as "greige uncut velveteen," "uncut velveteen" or "greige velveteen," and agreed that it would be considered an uncut pile fabric in which the pile is not cut or which can subsequently be cut to produce a pile fabric.

Thus, defendant's witness Gray testified on direct examination (R. 140–142):

Q. When velveteen is manufactured and it comes off the loom, would you consider it to be a pile fabric?

A. Yes.

Q. Why would you consider it to be a pile fabric?

A. Because it has, as in number one and five [the numbered yarns shown on the illustrative diagrams on exhibit B], foundation binder picks, and some form of combination of two, three, and four, which are pile picks.

Q. Could it be considered an uncut pile fabric?

A. Yes.

Q. Can a velveteen subsequently be cut to produce a cut pile fabric, a cut pile fabric?

A. Yes.

Q. Have you had an opportunity to examine Plaintiff's Exhibit 1?

A. Yes.

\* \* \* \* \* \*

Q. Based upon your experience and your examination of Plaintiff's Exhibit 1, do you have an opinion as to whether Plaintiff's Exhibit 1 constitutes an uncut plainback velveteen pile fabric?

A. It does.

Gray also stated that plaintiff's exhibit 1 has a pile composed of loops which he pointed out to the court by inserting a needle under several filling floats and raising them slightly. It was his opinion that plaintiff's exhibit 1 is a "loop" pile fabric (R. 180), but that if the loops were cut the fabric would be called a "cut velveteen" (R. 144). A loop, he testified, could be "projecting upward" even if it "lay horizontally flat" (R. 186), apparently so long as it had "air space" around it and a needle could be inserted into the fabric underneath it (R. 188–190).

This view as to the existence of a pile was not, however, shared by defendant's other witnesses. For example, while defendant's witness Lowe testified that plaintiff's exhibit 1 is a velveteen because of its construction and that it had "pile picks inserted during weaving" (R. 231) which could be

subsequently cut so that the end result would be a cut pile fabric or cut velveteen, he distinguished between "pile pick" and "pile" on cross-examination, as follows (R. 245–246):

A pile pick is the pick inserted in a fabric when it is being woven, which floats enough so that after the cloth has eventually been completely woven, and during the finishing process, can be cut. At this state, it becomes pile.

Elaborating on this aspect, Lowe continued (R. 255):

Pile is the effect one obtains from cutting pile picks and then brushing them so that the picks are put in basically perpendicular manner on the surface of the cloth.

Defendant's witness Siegel testified that a velveteen is a fabric that can be processed to make a "pile tuft fabric" (R. 273). With respect to plaintiff's exhibit 1, Siegel then testified as follows upon questioning by the court (R. 279–282):

JUDGE MALETZ: Now, what is there in this fabric which causes you to say— not causes you—what characteristic does Plaintiff's Exhibit 1 have which, in addition to being a velveteen, constitutes it a pile fabric?

THE WITNESS: It is capable of being cut. It *could not be a pile fabric, as such, until it is cut.* It is an uncut pile fabric at that point. It doesn't become a pile— and my definition of a pile would be a pile when a knife is inserted and cuts this loop. [Emphasis added.]

JUDGE MALETZ: Are you saying then that in this particular condition—are you saying then that Plaintiff's Exhibit 1 is capable of becoming a pile fabric after it is cut? Is that your testimony?

THE WITNESS: It is an uncut pile fabric in the state that it is at. There is no—pile has to stand up, in my understanding of pile. So, it cannot be a pile. It is uncut pile or raw material for a pile until this is cut.

JUDGE MALETZ: What I would like to know is this: Is this presently, forget-

ting about it has not been cut—is this now, in this condition, a pile fabric?

THE WITNESS: If you will allow me to say uncut pile, the answer is yes.

\* \* \* \* \* \*

JUDGE MALETZ: Do you refer to this as pile fabric in the trade?

THE WITNESS: I have not referred to it, no, sir.

JUDGE MALETZ: Very well. How do you refer to it?

THE WITNESS: We would call it an uncut velveteen.

In response to further questioning from the court, Siegel testified as follows (R. 289):

JUDGE MALETZ: In the trade, as you understand it, would the fabric like Plaintiff's Exhibit 1 be referred to as a pile fabric? I think you have already answered the question.

THE WITNESS: The answer is yes.

JUDGE MALETZ: Would you refer to it as a pile fabric?

THE WITNESS: We would call it uncut pile, but we would—

JUDGE MALETZ: You would call it uncut pile?

THE WITNESS: Yes.

JUDGE MALETZ: Would you call it pile fabric? That is my question.

THE WITNESS: The answer is no, sir.

BY MR. SILVERMAN: (Cont'g)

Q. May Plaintiff's Exhibit 1 be properly characterized a pile fabric in which the pile is not cut?

A. It is.

Q. May it be properly characterized an uncut or not cut velveteen?

A. It is.

Subsequently, Siegel testified that plaintiff's exhibit 1 is a "pile fabric" with a "raised filling pile" (R. 294) composed of a "flat loop" (R. 302).

Defendant's fourth witness, Lutzer, testified that plaintiff's exhibit 1 is a velveteen pile fabric and defined "pile" as a "raised portion \* \* \* of a base fabric" (R. 349). When asked on cross-examination if plain-

tiff's exhibit 1 had any short projecting ends, he responded "I don't know" (R. 352). He stated that plaintiff's exhibit 1 is a pile fabric because it has a "pile construction," the pile consisting of the "extra filling yarns" (R. 359).

IV

Against this background, we turn first to the heading set forth, *supra*, governing the pile fabric provisions in subpart A of part 4, schedule 3. The heading limits the scope of these provisions to pile fabrics in which the pile was inserted or knotted during the weaving or knitting, but includes all such fabrics whether or not the pile covers the entire surface and whether the pile is wholly or partly cut or is not cut.

It is not disputed that the first part of the heading refers to the pile picks or extra filling or warp threads which are inserted during the weaving of the fabric. However, as indicated from the foregoing summary of the record, the parties ascribe different meanings to the latter portion of the heading, plaintiff claiming that it plainly requires the existence of a raised pile, which may be wholly or partly cut or not cut (i. e., in loops) upon the surface of the fabric, and defendant contending that it unquestionably refers to the pile pick or filling float inserted in the fabric, whether or not the float is cut or raised from the fabric surface.

Both parties cite various lexicographic and textile authorities as sources for the common meaning of the terms "pile," "pile fabric" and "velveteen," and rely upon judicial decisions of the court and opinions of the Board of General Appraisers construing various predecessor pile fabric provisions to support their respective positions.

 It is fundamental that, in the absence of contrary legislative intent, the common meaning of a term controls in construing the tariff statutes, and that common meaning is a matter of law to be determined by the court. E. g., *United States v. O. Brager-Larsen*, 36 CCPA 1, 3, C.A.D. 388 (1948). To this end, the court

may consult extrinsic sources such as dictionaries and authorities. Further, faced as we are here with conflicting interpretations of the governing tariff heading, and finding that the disputed language is not without ambiguity, it is appropriate to resort to the legislative history to determine the Congressional intent which is the primary purpose of statutory construction. *United States v. Durst Mfg. Co., Inc.,* 46 CCPA 74, C.A.D. 700 (1959); *United States v. J. Eisenberg, Inc.,* 43 CCPA 105, C.A.D. 616 (1956).

The term "pile fabrics" was first used in the enumeration of dutiable merchandise in the Tariff Act of 1890, appearing under the cotton, wool and silk schedules in paragraphs 350, 396 and 411, respectively, and was employed in paragraphs 259 and 299 of the cotton and silk schedules in the Tariff Act of 1894.[5]

The phrase "cut or uncut" was subsequently added by Congress in the Tariff Act of 1897 to the cotton (vegetable fiber)

and silk pile fabric paragraphs and a provision was added for flax pile fabrics.[6]

The phrase "whether or not the pile covers the entire surface" was added by paragraphs 325 and 353 of the Tariff Act of 1909 to the cotton (or other vegetable fiber except flax) and flax provisions. The term "cut or uncut" was retained in the provision for silk pile fabrics (paragraph 399) which distinguished between velvets and plushes on the basis of "the length of the pile." [7]

In the Tariff Act of 1913, the cotton provision (paragraph 257) and the flax, hemp and ramie pile fabric provision (paragraph 280) retained the added language of their predecessor provisions; two provisions, covering pile fabrics of wool and of animal hair (paragraphs 288 and 309), using the phrases "cut or uncut" and "whether or not the pile covers the entire surface" were added to the dutiable schedules; and paragraph 314, the silk pile fabric provision, was in large part revised, omitting among others, the phrase "cut or uncut." [8]

---

**5.** Paragraph 259 of the Tariff Act of 1894 provided for—

Plushes, velvets, velveteens, corduroys, and all pile fabrics composed of cotton or other vegetable fiber, not bleached, dyed, colored, stained, painted, or printed, * * *.

Paragraph 299 of this act provided for—

Velvets, chenilles, or other pile fabrics, composed of silk, or of which silk is the component material of chief value, * * * plushes, composed of silk, or of which silk is the component material of chief value, * *.

**6.** Paragraph 315 of the 1897 act provided for—

Plushes, velvets, velveteens, corduroys, and all pile fabrics, cut or uncut; any of the foregoing composed of cotton or other vegetable fiber, not bleached, dyed, colored, stained, painted, or printed, * * *.

and paragraph 386 of this act covered—

Velvets, velvet or plush ribbons, chenilles, or other pile fabrics, cut or uncut, composed of silk or of which silk is the component material of chief value, * * * plushes * * *.

Paragraph 342 provided for—

All pile fabrics of which flax is the component material of chief value, * * *.

**7.** Paragraph 325 provided for—

Plushes, velvets, velveteens, corduroys, and all pile fabrics, cut or uncut, whether or not the pile covers the entire surface; any of

the foregoing composed of cotton or other vegetable fiber, except flax, * * *.

and paragraph 353 covered—

All pile fabrics, whether or not the pile covers the entire surface, composed of flax, or of which flax is the component material of chief value, * * *.

Paragraph 399 provided for—

Velvets, chenilles, and other pile fabrics, not specially provided for in this section, cut or uncut, composed wholly or in chief value of silk, * * *. Plushes, cut or uncut, composed wholly or in chief value of silk, * *. The distinction between "plushes" and "velvets" shall be determined by the length of the pile; those having pile exceeding one-seventh of one inch in length, to be taken as "plushes;" those having pile one-seventh of one inch or less in length, shall be taken as "velvets." The distance from the end of the pile to the bottom of the first binding pick shall be considered as the length of the pile. * *

**8.** The pile fabric provisions of the 1913 act read as follows [emphasis added]:

Par. 257. Plushes, velvets, plush or velvet ribbons, velveteens, corduroys, and all pile fabrics, *cut or uncut, whether or not the pile covers the entire surface;* any of the foregoing composed wholly or in chief value of cotton or other vegetable fiber, except flax, hemp, or ramie; * * *.

Par. 280. All pile fabrics, *whether or not the pile covers the entire surface,* composed of

The provisions of the 1913 act were revised by the Tariff Act of 1922 which, in accordance with the intent stated in the *Summary of Tariff Information, 1921,*[9] to "secure uniformity" in the pile fabric provisions, used the identical phrasing, "cut or uncut, whether or not the pile covers the whole surface," in the cotton, vegetable fiber (other than cotton) and wool pile fabric paragraphs (910, 1012 and 1110).[10]

It is significant that, consistent with the stated purpose of achieving uniformity in the classification of pile fabrics, regardless of their component materials, the *1921 Summary* uses substantially the same descriptive language in explaining the scope of each of these provisions. Thus, the sections on cotton, vegetable fiber (other than cotton) and wool pile fabrics all state that: "Pile fabrics consist of a foundation cloth covered in whole or in part by *short projecting ends or loops* made with an extra set of threads." [Pp. 874, 924, 978; emphasis added.]

> flax, hemp, or ramie, or of which flax, hemp, or ramie is the component material of chief value, * * *.
> Par. 288. * * * plushes, velvets, and all other pile fabrics, *cut or uncut,* woven or knit, *whether or not the pile covers the entire surface,* made wholly or in chief value of wool, * * *.
> Par. 309. Plushes, velvets, and all other pile fabrics, *cut or uncut,* woven or knit, *whether or not the pile covers the entire surface,* made wholly or partly of the hair of Angora goat, alpaca, or other like animals, and articles made wholly or in chief value of such plushes, velvets, or pile fabrics, * * *.
> Par. 314. Velvets, plushes, chenilles, velvet or plush ribbons, or other pile fabrics composed of *silk or of which silk is the component material of chief value,* * * *.

**9.** The *1921 Summary* was prepared by the Tariff Commission for the Senate Committee on Finance *in connection with its study of H.R.* 7456, subsequently enacted as the Tariff Act of 1922. It states, with respect to the proposed provision, for pile fabrics of vegetable fiber other than cotton, enacted as par. 1012, that the phrase "cut or uncut" was introduced "to render the provision in this schedule as nearly uniform as possible with the corresponding provision in the cotton schedule" (p. 925), and *notes in connection with the provision enacted* as par. 1110 (p. 970) that—

The section in the *1921 Summary* on cotton pile fabrics also observes (p. 874):

> * * * In the case of velveteen and corduroy this extra set of threads consists of filling whereas in the case of velvet and plush it consists of warp. *Filling piles are always cut whereas warp piles may be either cut or loop (uncut).* Terry-woven fabrics are made by a different method from that used for other pile fabrics and usually have uncut loops on both sides of the cloth. [Emphasis added.]

Further, the section on pile fabrics of vegetable fiber other than cotton states (p. 924), that—

> * * * Pile made of flax, hemp, ramie, jute, etc., lacks the resilience of pile made of cotton, mohair, or silk, and *when pressed down does not readily revert* to its upright position; * * *. [Emphasis added.]

The section on silk pile fabrics states that these fabrics (p. 1027)—

> The manufacture of pile fabrics forms a distinct branch of the textile industry and for this reason, and to secure uniformity with pile fabric provisions (pars. 909 and 1011) in other textile schedules, a special paragraph is here devoted to pile fabrics and manufactures thereof, falling under the wool schedule. * * *

**10.** The pile fabric provisions in the 1922 act read as follows:

> Par. 910. Pile fabrics, composed wholly or *in chief value of cotton, including* plush and velvet ribbons, cut or uncut, whether or not the pile covers the whole surface, * * *.
> Par. 1012. Pile fabrics, composed wholly or in chief value of vegetable fiber other than cotton, cut or uncut, whether or not the pile covers the whole surface, * * *.
> Par. 1110. Pile fabrics, cut or uncut, whether or not the pile covers the whole surface, made wholly or in chief value of wool, * * *.

The silk pile fabric provision, par. 314, was unchanged. It provided for—

> Velvets, plushes, chenilles, velvet or plush ribbons, or other pile fabrics, composed of silk or of which silk is the component material of chief value, * * *.

* * * include cloths and ribbons composed of a woven ground of silk or other material more or less completely concealed by a covering of short silk threads, or pile, *which project from it as cut ends or, in a few fabrics, as loops.* Silk pile cloths are mainly velvets and plushes, which differ principally in that the pile of velvet is the shorter. * * * [Emphasis added.]

It is also noted that the earlier *Summary of Tariff Information, 1920,* states, in the section on cotton pile fabrics, at pp. 409–410 that pile fabrics—

* * * are distinguished from all other woven articles by their surface, which shows a *series of short ends or loops issuing from the cloth and usually concealing the interlacing of the warp and filling.* They are two kinds—warp piles made with two warps and one filling, producing velvet and plush; and filling piles made with two fillings and one warp, producing such goods as velveteen and corduroy.

Pile fabrics may be plain or figured, commonly the former, and either cut or uncut. Warp-pile fabrics permit of a greater variety of effects and are the most extensively used. Terry-woven cloths are *uncut loop-pile fabrics* made without the aid of wires. * * * [Emphasis added.]

The point of the foregoing recital of these early tariff provisions and the *1920* and *1921 Summaries* is that they demonstrate beyond a doubt that by 1921, a pile fabric, regardless of its component materials, was considered for tariff purposes to be one which had a pile projecting from the surface of the ground fabric in the form of short ends or loops.

It may be noted that prior to the revisions in 1909 to the pile fabric provisions, the courts and the Board of General Appraisers, in relying upon commercial testimony, had construed the term "pile fabrics" to be limited to goods which had a pile that covered the entire surface of the fabric. What is more significant, in view of the issue raised herein, is that, with one exception referred to in note 11 *infra,* the term was limited to fabrics which had a *raised* pile on their surfaces.

In *McGibbon & Co. v. United States,* T.D. 17638–G.A. 3686 (1896), the Board of General Appraisers held that goods that had a raised pile covering only one-half the surface of the fabrics were dutiable as silk pile fabrics under paragraph 299 of the Tariff Act of 1894. The circuit court reversed, 107 F. 265 (S.D.N.Y.1900), holding the goods to be dutiable, as manufactures of silk, stating (ibid.):

* * * Inasmuch as the fabric as a whole is not substantially a pile fabric, and is not commercially known as such, the fact that a portion thereof has a pile surface is not sufficient to constitute it a pile fabric.

The circuit court of appeals affirmed the lower court *per curiam.* See *United States v. McGibbon,* 113 F. 1021 (2d Cir. 1902).

The *McGibbon* holding was followed in *W. & J. Sloane v. United States,* 7 Treas. Dec. 277, T.D. 25037 (1904), involving silk and metal fabrics having a partially raised pile surface which were assessed under the Tariff Act of 1897; and in *McGibbon & Co. v. United States,* 7 Treas.Dec. 595, T.D. 25197 (1904), involving silk and cotton fabrics with strips of raised pile upon the face of the goods, which were also assessed under the 1897 act. See also *H. Robinson v. United States,* 9 Treas.Dec. 426, T.D. 26149 (1905); and *Stroheim & Romann v. United States,* 9 Treas.Dec. 990, T.D. 26447 (1905).

The addition in the 1909 revisions of the cotton and flax provisions of the phrase "whether or not the pile covers the entire surface" limited the effect of the 1897 *McGibbon* holding. However, failure to include this language in paragraph 399, which provided for silk "velvets, chenilles, and other pile fabrics * * * cut or uncut," was contended by the government, in *United States v. Schumacher & Co.,* 3 Ct.Cust. Appls. 301, T.D. 32586 (1912), to be demonstrative of Congressional intent that paragraph 399 included only goods that had an "erect pile" upon their entire surface. *Schumacher,* it is to be noted, involved

goods composed in chief value of silk having in part a pile surface that were classified by the collector as woven fabrics in the piece under another provision of paragraph 399 on the ground that they were not pile fabrics. The importers protested, claiming that the goods were classifiable as velvets. The appellate court, noting that the goods, unlike those in *McGibbon,* were almost entirely covered with pile and that the importers had established that the goods in question had been commercially known as pile fabrics for over 30 years, affirmed the decision of the Board of General Appraisers sustaining the protest. Following *Schumacher,* similar decisions were reached by the Board with respect to silk fabrics assessed under the Tariff Act of 1913. See *L. E. Stirn v. United States,* 29 Treas.Dec. 165, Abs. 38279 (1915) and *Francois Coste v. United States,* 30 Treas.Dec. 1151, Abs. 39907 (1916).

In *M. J. Corbett & Co. v. United States,* 26 Treas.Dec. 970, T.D. 34545 (1914), the Board held that certain cotton "terry cloth," which it stated (p. 971) was woven

\* \* \* in such a manner that one face of the goods is practically covered with closely placed loops of thread which issue from the body of the fabric at right angles thereto. \* \* \*

was an "uncut pile fabric" and properly classified as such under paragraph 325 of the Tariff Act of 1909. Referring to the trade testimony bearing on the meaning of the term "pile fabrics," the Board stated (pp. 971–972):

\* \* \* From the definitions given, it is clear that the term is not used in trade and commerce in any different manner than it is in common speech. As ordinarily understood, a pile fabric is a fabric in

which a soft covering or nap overspreads and conceals to a great extent the interlacing of the warp and filling threads. *This nap is formed by a series of threads which issue from the body of the fabric at right angles.* In some fabrics the nap or pile is in the form of a series of loops, such as we find in Brussels carpet, while in others the ends of the threads are cut or sheared off smoothly so as to form a uniform and even surface, presenting the ends of the fiber to the eye, as is ordinarily found in velvets, velveteens, plushes, velours, etc.[11] [Emphasis added.]

The *Corbett* holding was followed in *C. A. Haynes & Co. v. United States,* 30 Treas. Dec. 790, T.D. 36403 (1916), with the Board citing the statement in the earlier case that pile fabrics required two systems of warp or filling threads, and commenting (p. 792):

The reason for this is that, in order to produce the *effect known as the pile fabric,* including velvets, plushes, and astrakhans, this extra and distinct set of warp or filling threads is required. [Emphasis added.]

Also, in *Naday & Fleischer v. United States,* 34 Treas.Dec. 677, Abs. 42032 (1918), involving certain cotton dress goods classified as pile fabrics under paragraph 257 of the Tariff Act of 1913, the Board stated (p. 677):

\* \* \* The cloth is plain woven but the warp threads are of two sizes. The heavy threads which lie about one-eighth of an inch apart were formed into a loop at intervals of about a quarter of an inch and the tops of the loops have been clipped leaving the raw edges loose. *These loose ends do not extend at right angles from the body of the fabric form-*

11. It is noted that a prior decision of the Board, in *Velutina Bias Company v. United States,* 2 Treas.Dec. 169, T.D. 21454 (1899), holding certain unbleached uncut cotton cloth to be properly classifiable as "velveteen uncut" under paragraph 315, Tariff Act of 1897, is in conflict with the holding in *Corbett* and other cases cited herein. The merchandise in *Velutina* had, in fact, been classified as uncut *velvet* under that paragraph but the Board held it to be an uncut *velveteen.* The facts upon which the

Board relied are unclear and confusing. The testimony elicited showed that the fabric was imported for conversion into cotton *velvet* and for subsequent conversion into a bias *velveteen.* However, it is not stated whether the extra set of threads was warp or filling. The court found that the cloth was woven especially to be cut and made into a velveteen.

We do not find this opinion to be of assistance to the government's case in light of the later decisions which we discuss below.

ing a nap, as did the so-called pile threads in the case of *M. J. Corbett & Co.* (G.A. 7572, T.D. 34545), and, following the rule laid down in that case, we find that the goods are not pile fabrics. * * * [Emphasis added.] [12]

Of special significance is the construction placed by our appellate court in *Knauth, Nachod & Kuhne v. United States,* 6 Ct. Cust.Appls. 128, T.D. 35389 (1915) upon the phrase "cut or uncut" in paragraph 325 of the Tariff Act of 1909, providing (among other things) for cotton pile fabrics. The imported merchandise, consisting of imitation mohair astrakhans composed of jute and cotton, with a closely curled looped pile on the face of the fabric, was assessed under this provision and claimed to be dutiable as manufactures in chief value of cotton or of vegetable fiber.

The court cited dictionary definitions of "pile weaving," "pile" and "pile fabric," and noted (at pp. 129–130) that "pile fabric" was defined in *Knight's American Mechanical Dictionary* as—

One in which a looped weft is formed by wires, to be afterwards cut, as in velvet and in Wilton carpet, or left in loops, as in Brussels carpet.

The court then stated that the merchandise would be called a pile fabric within these definitions unless it were found that the term was used in a different sense in the tariff statutes. The court observed that astrakhans had formerly been held not to be classifiable as pile fabrics under the Tariff Act of 1890, because they were not so classed within the commercial understanding, and commented thereon as follows (at pp. 130–131):

It may be noted that this commercial understanding was apparently based upon the view that to constitute a pile fabric as commercially known it must present an appearance similar to that of plushes and velvets. In other words, that the loops must have been cut.

But in the later statutes, including the one in 1909, here under consideration, the language of the statute is different from that of 1890, and so far from indicating an adoption of the judicial interpretation placed upon the term "pile fabric" * * the Congress enlarged the term * * *.

* * * * * *

It is suggested, however, in this case that the evidence shows that this fabric is not capable of being cut, and that for this reason it should be held excluded from the paragraph. We do not think its susceptibility of being cut is essential. Congress evidently had in mind *two classes of pile fabrics, one of which is cut and presents a surface similar to velvet and plush, the other like astrakhan or Brussels carpet, which present a loop surface.* To distinguish between two classes the words "cut or uncut" were used, and the use of these words plainly includes all such as are uncut as well as those which are cut. * * * [Emphasis added.]

It is patent from the court's exemplars of *uncut* pile fabrics, i. e., those which have a "loop surface," that it had in mind fabrics with a raised pile.[13]

The 1922 tariff act was succeeded by the Tariff Act of 1930 which made minor changes in the pile fabric provisions and added another to cover pile fabrics of rayon or other synthetic textiles. Thus, paragraph 909 provided for cotton pile fabrics "cut or uncut, whether or not the pile covers the entire surface," and paragraphs 1012, 1110, 1206 and 1307 provided, respectively, for vegetable fiber (other than cotton), wool, silk, and rayon or other synthetic textiles pile fabric "whether or not the pile covers the entire surface * * * if the pile is wholly cut or wholly uncut * * * [or] if the pile is partly cut."

12. See also *Sherman & Sons Co. v. United States,* 37 Treas.Dec. 187, T.D. 38188 (1919), involving fancy striped voiles and dotted marquisettes which were held to be properly classifiable as cotton cloth rather than as pile fabrics under the Tariff Act of 1913.

13. It is noted that the *Knauth* and *Corbett* decisions were cited in the *Summary of Tariff Information, 1920,* pp. 410–411.

It does not appear that any changes were intended in the 1930 act in the meaning of the term "pile fabrics," as evidenced by the comments in the *Summary of Tariff Information, 1929,* which was prepared for Congressional use in updating the 1922 act. The *Summary* describes pile fabrics in language markedly similar to that employed in the earlier editions. And using identical language in the sections on the cotton, vegetable fiber (other than cotton) and wool pile fabric provisions it describes pile fabric at pages 1572, 1644 and 1705, as consisting of a—

> * * * foundation cloth covered in whole or in part by short projecting ends or loops produced in the weave with an extra set of threads. * * *

The section on silk pile fabrics states (p. 1765):

> *Pile fabrics are distinguished from all other woven fabrics by their surface, which is covered in whole or in part by a series of short ends or loops projecting from the body of the cloth* and usually concealing the interlacing of the ground warp and filling. These fabrics are known as "cut" or "loop" (uncut) piles, according as the loops have been cut or left as woven. [Emphasis added.]

The foregoing demonstrates that pile fabrics were defined not only in terms of their weave but of the type of pile "projecting" from the surface of the fabric.

It is worthy of note that this court had occasion to construe the wool pile fabric provisions of the 1922 and 1930 acts in *British & Irish Woolens Corp. v. United States,* 65 Treas.Dec. 668, T.D. 47009 (1934), which involved certain wool cloth known as "Montagnac"—a fabric which was produced in the weave with an extra set of filling threads, some of which had been raised and severed by a napper that produced a "hairiness" on the surface of the fabric. The merchandise was assessed as a woven fabric under the 1922 and 1930 acts, depending upon the date of entry, on the ground that the fabric surface had a "nap," not a "pile" and hence was a "napped" rather than a "pile" fabric. The importer protested, claiming that the structure of the cloth and the napping were sufficient to bring the goods within the classification of "pile fabrics."

The court found little difference between the terms "nap" and "pile," stating (pp. 670, 672):

> The terms "nap" and "pile" as applied to the result seem to be practically identical and such differences between the "hairiness" of "napped fabrics" and the "hairiness" of "pile fabrics", which the terms "nap" and "pile" seem intended to connote, are not fundamental differences in the product but in the method of production. Both terms designate a "hairiness" on the surface of woven fabrics which in some cases, as has been demonstrated at the instant trial, are so much alike that even an expert of 35 years' experience admitted that he could not be sure whether the cloth here in question was a "napped" or a "pile" fabric without an analysis.
>
> * * * * * *
>
> This difference in the method of production is, as we have already outlined from our understanding of the conflicting testimony, that what is termed a "nap" or "napped fabrics" is produced by the *raising of some of the fibers of the threads* which compose the basic fabric, whereas the "pile" on "pile fabrics" must *be the raising at intervals, in the form of loops,* the entire thickness of extra threads introduced into, but not essential to the basic fabric, which thus form an "uncut pile." These loops if cut then form a "cut pile." [Emphasis added.]

Although the testimony indicated that not all of the extra filling threads were raised by the napper, or cut, the court found, by virtue of the provision in the 1930 act covering pile "partly cut," that it was unnecessary for all the extra threads to be so raised or cut. Concluding that the fabric in issue conformed to the requirements set forth in *M. J. Corbett & Co. v. United States, supra,* 26 Treas.Dec. 970, in that the goods were napped or teasled and had the weave structure described in the former

case, the court held the cloth to be classifiable as pile fabric.

The decision of this court in *British & Irish Woolens Corp.* was affirmed in *United States v. British & Irish Woolens Corp.*, 22 CCPA 658, T.D. 47635 (1935). There, the appellate court, noting the testimony of some government witnesses that a "true" pile is made only by cutting the extra threads with a knife, and not by tearing them with a napper, stated (p. 663)—

> We find no authority which would seem to justify a holding that, as a matter of law, to create a true pile, a knife must be used for cutting the threads. If a *pile is actually created* it would not seem to be of any legal consequence what instrument is used in performing the cutting operation. [Emphasis added.]

The import of this decision is unmistakable: if a hairlike surface or nap is produced on the face of the cloth, then, regardless of how it was produced, the fabric meets one of the two requisites—the other being the specified pile weave structure—for classification as a pile fabric.

Applying these two criteria to *velveteen* fabrics, it is evident that they are not met *unless and until* the filling pile threads have been cut to form the pile on the surface of the fabric. Thus, the *Summary of Tariff Information, 1929,* states in part (p. 1572):

> * * * Technically, pile fabrics are divided according to method of construction into two classes: (1) Filling piles, such as velveteen and corduroy, and (2) warp piles, such as velvet, plush, and terry-woven fabrics. In all cases the foundation fabric requires its own set of warp and filling threads, and the pile, whether warp or filling, is made from an additional set of threads. *Filling pile is always cut,* whereas warp pile may be either cut or loop (uncut). [Emphasis added.]

Similarly Vol. 9 of the *Summaries of Tariff Information, 1948,* prepared by the Tariff Commission in response to a directive from the Ways and Means Committee [14] to "rewrite or otherwise bring up to date * * * the commodity summaries of tariff information," describes cotton velveteens as [15] —

> * * * filling-pile fabrics in which part of the filling *is cut to form a pile* which spreads uniformly *over the entire surface of the fabric.* * * * [Emphasis added.]

It is also significant that Vol. 13 of the *1948 Summaries* states, in the section on rayon pile fabrics (p. 66):

> Pile fabrics differ from other woven fabrics in having their surface covered in whole or in part by *short projecting ends or loops.* Fabrics distinguished by a *wholly cut pile* have their surface *covered with short erect threads,* the height of which is one-seventh of an inch or less in velvets and over one-seventh of an inch in plushes. Fabrics characterized by a *wholly uncut pile* have their surface *covered with small loops.* Those with a *partly cut pile* are mainly jacquard-figured goods and other novelties wherein patterns are worked out by a *combination of erect pile and loop pile.* [Emphasis added.]

And in the section of the *1948 Summaries* on wool pile fabrics (Vol. 11, Part 2, p. 49) the following is stated:

> Pile fabrics consist of foundation or ground fabrics *on which the pile is formed by short projecting yarn-ends (if cut pile) or loops (if uncut pile).* The pile, made from an extra set of yarns, may consist either of filling yarns, as in corduroy, or of warp yarns, as in plush, frieze, and Astrakhan. *Filling pile is always cut* ; warp pile may be cut, partly cut, or uncut. [Emphasis added.]

We cite the *1948 Summaries,* not as evidence of legislative intent in enacting the pile fabric provisions in the Tariff Act of 1930, but as demonstrating a consistency over many years in the treatment and understanding of the term "pile fabrics" by

---

14. Resolution of July 25, 1947 referred to in *Summaries,* Vol. 9, p. iii.

15. Id. at p. 70.

the Tariff Commission which has been periodically charged by Congress with the responsibility of preparing the commodity surveys and summaries upon which the latter has relied in revising the tariff statutes.

Turning now to the Tariff Schedules of the United States and the provisions in issue, we are unable to discern any intent in the revised tariff schedules adopted under the Tariff Classification Act of 1962 to change the understanding of the term "pile fabrics" as expressed in the foregoing legislative history and judicial decisions.[16] We find rather that the heading in question incorporates the previously defined standards for classification of pile fabric: (1) construction, i. e., insertion or knotting of the intended pile (extra warp or filling thread) in the fabric during the weaving or knitting, and (2) a pile effect or formation which at least partly "covers the * * * surface" and which may be wholly or partly cut or not cut (in loops).

Therefore, in light of these standards, unless or until the pile picks or filling floats of an uncut velveteen greige cloth are cut to form the pile on the face of the fabric, it is not a pile fabric within the ambit of the pile fabrics heading and is precluded from classification thereunder as "velveteen."

Beyond these considerations, we note that generally the definitions given in the lexicons and textile authorities comport with our understanding of the terms "pile," and "pile fabrics" and "velveteen" as used in the tariff schedules. Thus, in Hollen and Saddler, *Textiles* (3d ed., 1968), a source cited by defendant, the following appears at pp. 161–162:

> Pile fabrics are three-dimensional fabrics that have yarns or fibers forming a dense cover of the ground fabric. * * *
>
> * * * * * *
>
> Woven pile fabrics are three-dimensional fabrics made by weaving into the basic structure an extra set of warp or filling yarns to make loops or cut ends on the surface. Pile fabrics are classified by the set of yarns used to form the pile, as filling pile and warp pile fabrics. (See Figure 19–2.)
>
> Filling Pile Fabric
>
> This fabric is made with three sets of yarns. An extra set of filling yarns forms the pile. During weaving, extra yarns float across the ground weave. In *corduroy*, the floats are arranged in lengthwise rows; in *velveteen*, they are scattered over the base fabric. The floats are cut by a special machine consisting of guides that lift the individual floating yarns from the ground fabric and of revolving knives that cut the floats. (See Figures 19–3 and 19–4.)
> * * * [17]

---

**16.** The *Tariff Classification Study—Explanatory and Background Materials, Schedule 3* (Nov. 15, 1960), merely indicates an intent to consolidate all of the pile fabric provisions with some minor rate changes. It states (p. 129):

> Items 346.05 through 346.65 cover pile fabrics, that is, fabrics in which the pile was inserted or knotted during the weaving or knitting, whether or not the pile covers the entire surface, and whether the pile is wholly

or partly cut or is not cut. The only rate changes involved in connection with pile fabrics are those reflected in item 346.35 covering velvets, plushes, and velours, all of which have been brought together at the single rate of 35 percent ad valorem. These products are closely related and differ significantly *only as to the height of the pile.*

**17.** Fig. 19–4 is a diagram of a machine for cutting corduroy.

Loop Pile

Cut Pile

Fig. 19–2. Woven pile fabric.

Fig. 19–3. Filling pile. Floats are cut.

Also noted are the following definitions cited by defendant, from *Webster's Third New International Dictionary* (2d ed., 1963):

pile —a mass of raised loops or tufts covering all or part of a fabric or carpet that is formed by extra warp or weft yarns during the weaving and that produces a soft even compact furry or velvety surface.

velveteen —a clothing fabric usu. of cotton in twill or plain weaves made with a short close weft pile in imitation of velvet.

Turning now to the merchandise in issue, the court has examined plaintiff's exhibit 1 to determine if it has a pile within the meaning of the tariff schedules.[18] We find, despite the testimony of defendant's witness Gray, no evidence of a "pile," that is, raised short ends or loops projecting from the ground fabric—only uncut, flat filling floats which lie horizontally on and are interlaced with the ground weave.

Inasmuch as the imported merchandise lacks the requisite pile formation on its surface, it is not a "pile fabric" nor, to be more specific, a "velveteen" as provided for in item 346.15, TSUS.

In view of our holding, we need not reach the second issue raised by plaintiff, namely, whether the imported fabric has a velveteen construction.

For the above reasons, it is concluded that the merchandise in issue is properly classifiable under item 320.14, as claimed by plaintiff. Judgment will be entered accordingly.

18. It is by now "axiomatic" that samples are potent witnesses.