MERRY MARY FABRICS, INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 75-1-00260

(Decided November 18, 1980)

*Glad, Tuttle & White* (*Robert Glenn White* at the trial and on the briefs) for the plaintiff.

*Alice Daniel,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation (*Jerry P. Wiskin* at the trial and on the brief), for the defendant.

*Lamb & Lerch* (*David A. Golden* at the trial) amicus curiae.

LANDIS, Judge: This action was tried before me at Los Angeles, California, and involves the classification of a cotton pile fabric which originated in the People's Republic of China, was shipped to Hong Kong and exported subsequently from Hong Kong to the United States in May 1972.

Customs officials classified the fabric as velvet under the Tariff Schedules of the United States (TSUS) item 346.35, dutiable at 70 per centum ad valorem.[1]

Plaintiff contends that the fabric is properly classifiable as plain-back velveteen, dutiable at 31.25 per centum ad valorem pursuant to TSUS item 346.15. Alternatively, plaintiff contends that the fabric in issue is neither velvet nor velveteen and is classifiable as other cotton pile fabrics under TSUS item 346.45, dutiable at 40 per centum ad valorem.

At trial,[2] plaintiff urged that if the merchandise ultimately was

---

[1] Pursuant to headnote 3(e) of the General Headnotes and Rules of Interpretation of TSUS (1972), the appropriate rate is that stated in col. 2 of the items of the tariff schedules in issue. Nondiscriminatory treatment to the products of the People's Republic of China has been granted only recently pursuant to Presidential Proclamation 4697, dated Oct 23, 1979, which amended headnote 3(f) effective Feb 1, 1980, following adoption of a concurrent resolution by Congress on Jan. 24, 1980.

[2] At the commencement of the trial the court granted plaintiff permission to amend its complaint setting forth a third cause of action based upon the theory that Congress has not legislated a duty for cotton velvet in excess of 62½ per centum ad valorem and that the 70 per centum ad valorem duty was a result of Presidential Proclamation 2019 (T.D. 46048). The amendment further contends that this Proclamation was abrogated by T.D. 51802 which itself has not been abrogated thereby reinstating the Presidential Proclamation and the higher ad valorem rate for velvet. This third cause of action was withdrawn specifically by plaintiff by a statement to that effect in its opening brief.

deemed velvet, the proper rate of duty should be 62½ and not 70 per centum ad valorem, which additional claim this court directed at trial should be reduced to writing. Plaintiff has now abandoned this contention but has not abandoned the alternative contention that the imported textile is neither velveteen nor velvet, but rather other cotton pile fabrics under TSUS item 346.45.

The pertinent provisions of TSUS relative to the respective classification made by Customs and claimed by plaintiff and the duty assessments thereunder appear in subpart A, part 4, schedule 3, and are as follows:

SCHEDULE 3.—TEXTILE FIBERS AND TEXTILE PRODUCTS

\* \* \* \* \* \* \*

PART 4.—FABRICS OF SPECIAL CONSTRUCTION OR FOR SPECIAL PURPOSES; ARTICLES OF WADDING OR FELT; FISH NETS; MACHINE CLOTHING

\* \* \* \* \* \* \*

Subpart A.—Knit, Pile, Tufted, and Narrow Fabrics; Braids, and Elastic Fabrics

\* \* \* \* \* \* \*

Pile fabrics, in which the pile was inserted or knotted during the weaving or knitting, whether or not the pile covers the entire surface, and whether the pile is wholly or partly cut or is not cut:
Of cotton:

\* \* \* \* \* \* \*

[*Claimed under:*].
 Velveteens:
346.15 Plain-back_____ 31.25% ad val.

\* \* \* \* \* \* \*

[*Classified under:*]
346.35 Velvets, plushes, and velours_____ 70% ad val.

\* \* \* \* \* \* \*

[*Alternatively claimed under:*]
346.45 Other_____ 40% ad val.

Seven witnesses testified during the course of the trial.

Plaintiff's four witnesses either were buyers or sellers of fabrics including velvet and velveteen or utilized or had experience with velvet and velveteen in production of wearing apparel. Each of such witnesses of plaintiff testified the imported merchandise was velveteen. Their main criteria for determining the difference between velvet and velveteen was the feel of the fabric, the direction of the pile, the drape

of the fabric, the method of shipping the fabric, the reputation of the company from whom they were purchasing the fabric and the different uses of the fabric. None of plaintiff's witnesses possessed a technical knowledge or background in the manufacturing of velvet or velveteen.

Two of defendant's witnesses were associated with Crompton Co. which at the time was the sole domestic producer and manufacturer of velveteen. William Cooke was Crompton's corporate director of fabric development. Wayne Snyder was corporate director of energy conservation and water management of said company and was formerly director of research for Crompton. These witnesses testified in substance that a stipulated portion of the imported merchandise was velvet and that the difference between velvet and velveteen is essentially in the construction of the fabrics. These two witnesses for defendant testified to the effect that the imported merchandise contains a warp thread and a filling thread, and that the difference is that velvet contains an additional warp thread forming the pile, while velveteen contains an additional filling thread forming the pile. Both witnesses possessed good credentials and a strong background in the manufacturing of the fabrics. Defendant's remaining witness was basically a jobber of merchandise whose testimony was relatively useless.

Initially, the court must determine the appropriate test for the classification of the fabric in issue. Plaintiff urges that classification should be based upon the common meaning and understanding attributed to the imported merchandise by those who are engaged in buying and selling the merchandise in trade and commerce. No separate commercial designation having been alleged or proven, defendant argues that the imported merchandise should be classified in accordance with the common meaning accorded the terms velvet and velveteen by the manufacturers of such textiles who make most of the sales. Plaintiff's argument is essentially one directed to the external appearance and general outward physical characteristics of the completed fabric such as feel, handling and its less luxurious effect, while defendant's argument is one of construction.

The basic rule in construing tariff acts is to interpret them so as to carry out the intent of Congress. *Brecht Corp.* v. *United States*, 25 CCPA 9, T.D. 48977, *cert. denied*, 302 U.S. 719 (1937); *S & T Imports, Inc.* v. *United States*, 78 Cust. Ct. 45, C.D. 4690 (1977). Where doubt or ambiguity exists as to the meaning of a statute it is proper for the court to consult legislative history to resolve the issue. *United States* v. *Kung Chen Fur Corporation*, 38 CCPA 107, C.A.D. 447 (1951); *J. E. Bernard Co.* v. *United States*, 81 Cust. Ct. 60, C.D. 4766 (1978). While courts may not resort to legislative history or other extraneous matters to create an ambiguity, they may refer

to such matters to support the validity of their conclusion. *United States* v. *J. E. Bernard & Co., Inc.*, 42 CCPA 69, C.A.D. 573 (1954). Generally, tariff terms are to be construed in accordance with their common and commercial meanings, which are presumed to be the same. *United States* v. *C. J. Tower & Sons of Buffalo, N.Y.*, 48 CCPA 87, C.A.D. 770 (1961). Congress is presumed to know the language of commerce and to have framed the tariff acts so as to classify commodities according to the general usage and denomination of the trade. *Nylos Trading Company* v. *United States*, 37 CCPA 71, C.A.D. 422 (1949).

The primary source for the determination of legislative intent is the statutory language itself. *United States* v. *Gulf Oil Corporation, et al.*, 47 CCPA 32, C.A.D. 725 (1959). Of particular significance in the instant case is the fact that both velvet and velveteen are enumerated under the same heading as pile fabrics, etc. The term "pile fabrics" is a term defined by its basic construction. *Webster's Third New International Dictionary* (1966), which has been cited by plaintiff in its original brief, defines pile as:

> * * * a mass of raised loops or tufts covering all or part of a fabric or carpet that is formed by extra warp or weft yarns during the weaving and that produces a soft even compact furry or velvety surface.

A standard industry lexicon, also cited by plaintiff in its original brief, namely, *Fairchild's Dictionary of Textiles*, defines "pile" as:

> * * * Raised loops, cut interlacings of double cloths or tufts (cut loops), and other erect yarns or fibers deliberately produced on cloth, which form all or part of the surface of the fabric. May be warp pile, filling pile or knotted pile, and may be loops produced by weaving an extra set of yarns over wires which are drawn out of the fabric as weaving progresses.

Both said standard dictionary and industry lexicon define pile in terms of the act of combination of the component parts to form the end result of an integrated object. The term "construction" is similarly defined by *Webster's*, supra, as: "* * * 2a. the act of putting parts together to form a complete integrated object". It necessarily follows that where fabrics are enumerated under a heading which is by definition a term of construction, then the legislature in listing the fabrics under that heading is classifying them according to their construction and not according to the appearance of the end result. No contrary interpretation of the statutory language has been proffered by plaintiff nor has the court on its own research uncovered a different result.

Congressional intent as evidenced by the legislative history of this particular classification and judicial interpretation is completely in accord with the construction theory test for velvet and velveteen. As

early as 1890 these fabrics were classified together with "all pile fabrics composed of cotton or other vegetabl e fibers, etc.", Tariff Act of 1890 (26 Stat. 567). However, legislative history, based upon discussion in Congress, is silent as to the meanin g of velvet and velveteen under the 1890 act.

Subsequent tariff legislation likewise sheds no light on the difference between velvet and velveteen except that they are considered to be pile fabrics.[3]

In anticipation of a general revision of the Tariff Act of 1913, the House Ways and Means Committee commissioned the U.S. Tariff Commission to prepare a summary of the current tariff informa tion for the committee's use in revising the 1913 act. The result was the "Summary of Tariff Information, 1920."[4] This summary described pile fabrics:

> *Pile fabrics* are distinguished from all other woven articles by their surface, which shows a series of short ends or loops issuing from the cloth and usually concealing the interlacing of the wrap and filling. They are of two kinds—warp piles made with two warps and one filling, producing *velvet* and *plush;* and filling piles made with two fillings and one warp, producing such goods as *velveteen* and *corduroy.*

The "Summary of Tariff Information, 1929," prepared for the Ways and Means Committee in expectation of revision of the Tariff Act of 1922, which resulted in the passage of the Tariff Act of 1930, described "Cotton Pile Fabrics and Manufacturers of":

> A pile fabric consists of a foundation cloth covered in whole or in part by short projecting ends or loops produced in the weave with an extra set of threads. Technically, pile fabrics are divided according to method of construction into two classes: (1) Filling piles, such as velveteen and corduroy, and (2) warp piles, such as velvet, plush, and terry-woven, fabrics. In all cases the founda- tion fabric requires its own set of warp and filling threads, and the pile, whether warp or filling, is made from an additional set of threads. Filling pile is always cut, whereas warp pile may be either cut or loop (uncut).

---

[3] Tariff Acts of: 1894, 28 Stat. 509; 1897, 30 Stat. 151; 1905, 33 Stat. 928 (Philippine Trade Act); 1909, 36 Stat. 11; and 1913, 38 Stat. 114.

[4] It is judicially well settled that summaries of tariff information specially prepared for the use of congressional committees considering tariff proposals have long been recognized as authoritative for the purpose of resolving questions relating to the meaning and scope of terms which appear in tariff acts and in ascertaining congressional intent. *Keith Dunham Co.* v. *United States*, 26 CCPA 250, C.A.D. 24 (1938); *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, C.A.D. 625 (1956).

This court is of course mindful of the statement of Judge Rich in *Hawaiian Motor Company* v. *United States*, 67 CCPA 42, C.A.D. 1241, 617 F. 2d 286 (1980) as to summaries of trade and tariff information not being suitable for use as evidence of congressional intent in all cases.

These two summaries are the leading indicators of legislative intent as to the classification of pile fabrics.[5] Moreover, they succinctly define velvet and velveteen as being pile fabrics constructed in a special way, the difference between the two being whether the extra thread used in construction is of warp quality or filling quality.

Recent judicial interpretation also indicates that construction is the pivotal element in the classification of velvet and velveteen. In *Tilton Textile Corp.* v. *United States*, 77 Cust. Ct. 27, 29, C.D. 4670, 424 F. Supp. 1053, *aff'd*, 65 CCPA 18, C.A.D. 1199, 565 F. 2d 140 (1977), this Court stated:

> Summarizing our conclusions at the outset, we find that, *for tariff classification purposes, velveteen must have a certain characteristic weave* or construction, described *infra*, and a raised pile, which may be wholly or partly cut or not cut, issuing from the fabric and covering its surface at least in part. * * * [Italic added.]

The court then proceeded to define what it meant by this certain characteristic weave:

> The testimony of record conflicts on several points; however, it is not disputed that a common denominator of all pile fabrics is their construction, which consists of a foundation cloth made of warp and filling threads, and an extra set of threads, which may be warp or filling yarns, which form the pile. Essentially, there are two types of pile fabrics; *warp pile fabrics, such as velvet,* plush and terry fabrics, *which are constructed with an additional set of warp threads*; and *filling pile fabrics, such as velveteen* and corduroy, *which are constructed with* an extra set of *filling yarns.* [Italic added.] [Footnotes omitted not being germane to any arguments advanced by plaintiff or defendant.]

To date this is the most declarative judicial pronouncement indicating that the classification of pile fabrics is based solely upon the construction of said fabric and that the individual pile fabric, in turn, is classifiable according to its construction.

In accordance with the evidence, the legislative history, and the legal authority, it is this court's determination that the construction test determines the classification of velvet and velveteen.

In any event, plaintiff has wholly failed to sustain its burden of proving that the Government's classification is in error and that its

---

[5] There is no significant statement of legislative intent subsequent to the "1929 Summary of Tariff Information." The "Summary of Tariff Information (1948)" merely advises that there are two groups of velveteen, plain-back and twill-back, and singularly defines both as cotton velveteens which "* * * are filling-pile fabrics in which part of the filling is cut to form a pile which spreads uniformly over the entire surface of the fabric."

The Tariff Classification Act of 1962 classified separately velvet and velveteen yet the "Tariff Classification Study—Explanatory and Background Materials, Schedule 3 (November 1960)" does not indicate the legislative intent for such classification. It merely reiterates by implication that velvet and velveteen are classified as pile fabrics. The indepth analysis of the earlier tariff summaries has not been controverted and remains as a viable indicator of legislative intent.

own claimed classification is correct. See: *Hawaiian Motor Company* v. *United States*, 82 Cust. Ct. 70, C.D. 4790, 473 F. Supp. 787 (1979), *aff'd*, 67 CCPA 42, C.A.D. 1241, 617 F. 2d 286 (1980); *Schott Optical Glass, Inc.* v. *United States*, 82 Cust. Ct. 11, C.D. 4783, 468 F. Supp. 1318, *aff'd*, 67 CCPA 32, C.A.D. 1239, 612 F. 2d 1283 (1979); *Edge Import Corp.* v. *United States*, 83 Cust. Ct. 140, 484 F. Supp. 906 (1979).

There remains only the issue raised by plaintiff that the requirements for the classification of velvet and velveteen are dual in that the fabric must have a certain weave construction and have certain physical properties giving an outward appearance of velvet and velveteen, and are therefore classifiable as other cotton fabrics. The court concludes this contention to be meritless in view of the evidence, legislative history, and legal authority previously discussed. Also, in regard to said contention plaintiff has wholly failed to sustain its burden of proving the Customs classification is in error and its own claimed classification is correct. Id.

Accordingly the classification of the district director of customs at the port of Los Angeles is sustained and the complaint of plaintiff is, in all respects, dismissed.

Judgment will enter accordingly.